UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
WTC CAPTIVE INSURANCE COMPANY,       :
INC.,                                :
                                     :   2007 Civ. 1209 (AKH)
                         Plaintiff,  :
                                     :   AMENDED COMPLAINT FOR
                                     :   DECLARATORY JUDGMENT
           v.                        :   AND FURTHER RELIEF
                                     :
LIBERTY MUTUAL FIRE INSURANCE        :
COMPANY; CERTAIN UNDERWRITERS AT     :
LLOYD'S, LONDON, AND CERTAIN         :
LONDON MARKET INSURANCE              :
COMPANIES; ASSICURAZIONI GENERALI    :
S.P.A.; and GENERAL SECURITY         :
INDEMNITY COMPANY OF ARIZONA, as     :
attorney in fact for and successor in interest to :
GENERAL SECURITY INDEMNITY           :
COMPANY (now known as HUDSON         :
SPECIALTY INSURANCE COMPANY),        :
                                     :
                         Defendants. :
------------------------------------------------------------ x

MWE OFFICE COPY

JUN 1 1 2007

Plaintiff WTC Captive Insurance Company, Inc., by its attorneys, McDermott Will & Emery LLP, for its Complaint avers as follows:

## STATEMENT OF THE CASE

1.    In the aftermath of the September 11, 2001, terrorist attack on New York City, Liberty Mutual Fire Insurance Company ("Liberty Fire") and Certain Underwriters at Lloyd's, London, and Certain London Market Insurance Companies, including Assicurazioni Generali S.P.A. and General Security Indemnity Company (for whom General Security Indemnity Company Of Arizona is the attorney in fact and current successor in interest) (collectively, "the London Insurers"), contracted to defend and indemnify the City of New York and its contractors involved in the heroic rescue, recovery, and debris removal efforts for personal injury and property damage claims arising out of the World Trade Center Emergency Clean-up Project.

2. The City paid millions of dollars in premiums to Liberty Fire and the London Insurers for insurance liability coverage.

3. Liberty Fire and the London Insurers have refused to defend the City and its contractors in the 21 MC 100 (AKH) lawsuits ("the Disaster Site Litigation") pending in this Court in which thousands of claimants seek damages for personal injury, especially respiratory injury, allegedly sustained as a result of the rescue, recovery, and debris removal efforts at the World Trade Center site.

4. As a result, the WTC Captive Insurance Company ("WTC Captive"), a not-for-profit captive insurance company funded by a grant from the Federal Emergency Management Agency, has expended millions of dollars to defend the City and its contractors in the Disaster Site Litigation.

5. This lawsuit is necessary to compel Liberty Fire and the London Insurers to reimburse the WTC Captive and to fulfill their defense obligations to the City and its contractors pursuant to the terms of their respective insurance contracts.

6. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 seeking a declaration of the rights, duties, and responsibilities of defendant Liberty Fire under insurance policy RG2-621-004607-011 ("the Liberty Policy") and defendants the London Insurers under insurance policies 576/UF7278400 and 576/UF7280600 (collectively, "the London Policies") issued to the City of New York, and which name as Additional Named Insureds the City's contractors paid by the City of New York, for claims arising from the rescue, recovery, and debris removal efforts in the aftermath of the September 11, 2001, terrorist attack.

7. Plaintiff WTC Captive is an interested party that has thus far spent millions of dollars defending the City of New York and its contractors in the Disaster Site Litigation.

8. This action seeks further relief pursuant to 28 U.S.C. § 2202 for equitable contribution and breach of fiduciary duty to recover from Liberty Fire and the London Insurers those sums that plaintiff WTC Captive has expended in defending the City of New York and its contractors in the Disaster Site Litigation.

9. In particular, the WTC Captive seeks reimbursement of defense fees it has expended to date for the defense of the City and its contractors in the Disaster Site Litigation, and seeks a declaration that Liberty Fire and the London Insurers have a duty to defend the City of New York and its contractors in the Disaster Site Litigation.

## PARTIES

10. Plaintiff WTC Captive is a New York corporation with its principal place of business at 100 William Street, Suite 2001, New York, New York.

11. Upon information and belief, defendant Liberty Fire is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

12. Upon information and belief, the London Insurers are Certain London Market Insurance Companies that are foreign corporations with principal places of business outside the State of New York, and Certain Underwriters at Lloyd's, London, an unincorporated association of individuals who, at times relevant to this litigation, were underwriting members at Lloyd's, London, conducting insurance business, through managing agents, at Lloyd's, London, and had a principal place of business in London, England.

13. Upon information and belief, defendant Assicurazioni Generali S.P.A. ("Generali") is a corporation formed under the laws of Italy, which has its principal place of business in Italy, is the parent company of the Generali Group of insurance companies and is engaged in the insurance business.

14. Upon information and belief, General Security Indemnity Company of Arizona ("GSINDA") is an Arizona corporation with its principal place of business in Arizona. GSINDA is the attorney in fact for, and successor in interest to General Security Indemnity Company, now known as "Hudson Specialty Insurance Company." GSINDA has assumed General Security Indemnity Company's obligations and liabilities under insurance policies 576/UF7278400 and 576/UF7280600, and is the real party in interest with respect to those policies.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(3) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

16. This Court has original and exclusive jurisdiction over this civil action pursuant to 49 U.S.C. § 40101, the Air Transportation Safety and System Stabilization Act, § 408(b)(3) because it is an action brought for a claim resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001, and because it involves claims raising issues of law or fact involving the events of September 11, 2001, and their immediate aftermath.

17. In the London Policies, the London Insurers agreed that they "will submit to the jurisdiction of a Court of competent jurisdiction within the United States."

18. The Southern District of New York is a proper venue for this civil action because this Court has original and exclusive jurisdiction over this civil action pursuant to 49 U.S.C. § 40101, the Air Transportation Safety and System Stabilization Act, § 408(b)(3).

19. Venue also is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of New York and a

substantial part of the property that is the subject of this action is located in the Southern District of New York.

## FACTUAL ALLEGATIONS

### The Liberty Fire Policy

20.     Liberty Fire issued Commercial General Liability Policy No. RG2-621-004607-011 to First Named Insured City of New York; City of New York Department of Design and Construction (collectively "the City") for the Policy Period starting September 11, 2001, at 6:01 PM, standard time and ending September 11, 2002.

21.     Liberty Fire later extended the coverage period to December 31, 2002, per Endorsement Serial No. 24. A copy of the Liberty Policy is attached hereto as Exhibit 1.

22.     By an endorsement, the Liberty Policy adds Additional Named Insureds identified as "All enrolled contractors, subcontractors, consultants and subconsultants of any tier, as their interest may appear, for whom the First Named Insured has agreed by contract to provide general liability coverage under the Coordinated Insurance Program ('CIP'), excluding vendors, suppliers, off-site fabricators, material dealers and others who merely make deliveries to or from the Project Site(s)." Liberty Policy at Endorsement Serial Number 2.

23.     All contractors paid by the City for the World Trade Center disaster rescue, recovery, and debris removal efforts were enrolled as Additional Named Insureds on the Liberty Policy by the City.

24.     The Liberty Policy's Designated Project Schedule delineates the Designated Project as the "World Trade Center Emergency Clean-up Project" and identifies the World Trade Center, certain debris loading areas, "trucks in transit between the WTC Project Site and the Staten

Island Freshkill [sic] Site," and "unloading areas at the Staten Island Freshkill [sic] Site" as "Project Site(s)."

25. Under the terms of the Liberty Policy, Liberty Fire agreed that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Liberty Policy, Commercial General Liability Coverage Form, Insuring Agreement at 1.)

26. By Amendatory Endorsement Serial No. 1, the Liberty Policy was amended so that the term "bodily injury" was replaced with the term "personal injury" throughout the Liberty Policy and the term "personal injury" was defined to mean "bodily injury," subject to limited exceptions.

27. By Amendatory Endorsement Serial No. 2, the Liberty Policy was amended to "only apply to 'bodily injury', 'property damage' or 'personal injury':

> A. Arising out of:
>
> 1. Management and/or supervision operations performed by the First Named Insured at a Project Site(s) listed in the Designated Project Schedule; or
>
> 2. Operations performed by an Additional Named Insured at a Project Site(s) listed in the Designated Project Schedule
>
> but not within the "Products-Completed Operations Hazard".

28. By Amendatory Endorsement Serial No. 2, the Liberty Policy was amended to provide products/completed operations hazard coverage to "only apply to 'bodily injury,' 'property damage' or 'personal injury':

> B. Arising out of the following with respect to completed

operations:

1. a. Management and/or supervision operations performed by the First Named Insured at a Project Site(s) listed in the Designated Project Schedule; or

   b. Operations performed by an Additional Named Insured at a Project Site(s) listed in the Designated Project Schedule; and

2. within the "products-completed operations hazard",

   but only if such "bodily injury", "property damage" or "personal injury" occurs within three years from the earliest of: a. policy expiration, or b. acceptance of the project by the City of New York. "Bodily injury", "property damage" or "personal injury" covered under this paragraph that occurs after the policy period will be deemed to have occurred during the latest annual policy period during which a policy issued by us was in effect.

29. The Liberty Policy provides "Limits of Insurance" for Personal Injury and Property Damage Liability of $2,000,000 each occurrence.

30. The Liberty Policy has a General Aggregate Limit (Other Than Products–Completed Operations) of $4,000,000.

31. The Liberty Policy has separate "Limits of Insurance" for Products–Completed Operations of $2,000,000 in the aggregate.

32. Under Endorsement Serial No. 3 of the Liberty Policy, the Personal Injury and Property Damage coverage is subject to a combined deductible of $2,000,000 each occurrence and $4,000,000 aggregate.

33. The City met its deductible obligation by the payment of $4,000,000 to Liberty Fire to establish a pre-funded deductible liability insurance loss fund.

34.     Under Endorsement Serial No. 23 of the Liberty Policy, the policy coverage is subject to a Defense Limit of $2,000,000 per occurrence, a Defense Deductible of $2,000,000 per occurrence, and a Defense Aggregate of $4,000,000.

35.     The City met its Defense Deductible obligation by the payment of $4,000,000 to Liberty Fire to establish a pre-funded defense deductible fund.

36.     Endorsement Serial No. 23 of the Liberty Policy provides that Liberty Fire's duty to defend ends only when Liberty Fire has "used up the applicable limit of insurance in the payment of judgments or settlements ... or ... used up the Defense Limit, if applicable, in the payment of Supplementary Payments."

37.     Endorsement Serial No. 23 of the Liberty Policy provides that Supplementary Payments includes defense costs, i.e., "fees, salaries and expenses of attorneys ... we retain."

38.     Endorsement Serial No. 23 of the Liberty Policy defines the Defense Limit as "the most [Liberty] will pay for Supplementary Payments because of all 'personal injury' and 'property damage' arising out of any one 'occurrence'" and provides that the Defense Limit is "reduced by amounts you become obligated to pay and/or reimburse us within the Defense Deductible."

39.     Endorsement Serial No. 23 of the Liberty Policy provides that the City is obligated for all Supplementary Payments up to the Defense Deductible, which is $2,000,000 per occurrence.

40.     Endorsement Serial No. 23 of the Liberty Policy provides that the Defense Deductible to which the City is obligated "is subject to an Aggregate Defense Deductible" of $4,000,000 and that "[a]fter amounts paid within the Defense Deductible for Supplementary Payments exceed the Defense Aggregate Deductible, the Defense Limit and the Defense Deductible shall no longer apply."

41. Under the terms of the Liberty Policy, therefore, once the $4,000,000 Aggregate Defense Deductible is exceeded by the payment of defense costs, the Defense Limit and the Defense Deductible no longer apply and Liberty Fire's defense obligations end only when the indemnity limits are used up by the payment of judgments or settlements.

### The London Insurers' Policy 576/UF7278400

42. The London Insurers issued Excess Liability Insurance Policy 576/UF7278400 ("London Policy 576/UF7278400") to the City of New York and City of New York Department of Design and Construction for a Period of Insurance from September 11, 2001, to September 11, 2002, both days at 6:00 PM Local Standard Time (Post-collapse).

43. The London Insurers later extended the coverage period to December 31, 2002, per Endorsement Ref. 011 of London Policy 576/UF7278400. A copy of London Policy 576/UF7278400 is attached hereto as Exhibit 2.

44. London Policy 576/UF7278400 names as insureds the "City of New York and City of New York Department of Design and Construction including all associated subsidiaries, and affiliated companies and corporations, or joint ventures, as now exist or may hereafter be constituted or acquired including general Contractors, Subcontractors of any tier and Consultants and Sub-Consultants of any tier, for whom any afore-mentioned Insureds have agreed by contract to furnish the insurance coverage provided under this policy, per the project."

45. London Policy 576/UF7278400's Designated Project Endorsement identifies Covered Projects to include the World Trade Center and certain debris unloading areas.

46. Under the terms of London Policy 576/UF7278400, the London Insurers agreed that:

> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured

> under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence which takes place at the designated Project Site. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.
>
> If we are prevented by law or statute from paying an behalf of the Insured, then we will, where permitted by law or statute, indemnify the Insured for those sums in excess of the Retained Limit.

47. The amount that the London Insurers agreed they will pay for damages for personal injury and property damage under the terms of London Policy 576/UF7278400 Insuring Agreement III, Limits of Insurance, is $50,000,000 for each occurrence.

48. London Policy 576/UF7278400 has a general aggregate limit (other than Products–Completed Operations Hazard) of $50,000,000.

49. Under London Policy 576/UF7278400 Endorsement 2, the London Insurers agreed that "as respects the Products–Completed Operations Hazard, Bodily Injury and/or Property Damage occurring within 3 years from the date of final acceptance of the Project by the Owner shall be deemed to be an Occurrence within the policy period of this policy."

50. Under London Policy 576/UF7278400 Endorsement 2, the London Insurers agreed that "[t]he Products–Completed Operations Hazard Aggregate Limit [of $50,000,000] will apply as a separate aggregate limit for the entire period."

51. Under London Policy 576/UF7278400, the London Insurers have a right and duty to defend as follows:

> We shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when:
>
> 1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance

>
> providing coverage to the Insured have been exhausted by payment of claims to which this policy applies; or
>
> 2. Damages are sought for Bodily Injury, Property Damage, Personal Injury or Advertising Injury covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

52. Under London Policy 576/UF7278400, "[a]ll expenses [the London Insurers] incur in the defense of any suit or claim are in addition to [the London Insurers'] Limits of Insurance."

53. London Policy 576/UF7278400's Schedule of Underlying Insurances lists the limits of liability as follows:

> General Liability (All Named Insureds)
>
> $2,000,000 Bodily Injury and Property Damage each Occurrence combined single limit.
>
> $2,000,000 Each Occurrence in respect of Personal and Advertising Injury
>
> $2,000,000 in the Aggregate in respect of Products-Completed Operations
>
> $4,000,000 General Aggregate,

which amounts are the limits of the Liberty Policy.

54. London Policy 576/UF7278400's Schedule of Underlying Limits does not list the limits of any policy issued by the WTC Captive Insurance Company as underlying limits.

55. Under London Policy 576/UF7278400, the London Insurers have a duty to defend claims or suits covered potentially by those policies when the Liberty Policy is exhausted or does not apply.

### The London Insurers' Policy 576/UF7280600

56. The London Insurers issued Excess Liability Insurance Policy 576/UF7280600 ("London Policy 576/UF7280600"), to the City of New York and City of New York Department of Design

and Construction, both for a Period of Insurance from September 11, 2001, to September 11, 2002, both days at 6:00 PM Local Standard Time (Post-collapse).

57. The London Insurers later extended the coverage period to December 31, 2002, per Endorsement Ref. 010 of Policy 576/UF7280600. A copy of London Policy 576/UF7280600 is attached hereto as Exhibit 3.

58. London Policy 576/UF7280600 names as insureds the "City of New York and City of New York Department of Design and Construction including all associated subsidiaries, and affiliated companies and corporations, or joint ventures, as now exist or may hereafter be constituted or acquired including general Contractors, Subcontractors of any tier and Consultants and Sub-Consultants of any tier, for whom any afore-mentioned Insureds have agreed by contract to furnish the insurance coverage provided under this policy, per the project."

59. London Policy 576/UF7280600 lists the Underlying Excess Liability Policy as London Policy 576/UF7278400.

60. London Policy 576/UF72780600 does not list any policy issued by the WTC Captive Insurance Company as an Underlying Excess Liability Policy.

61. London Policy 576/UF7280600 is subject to the same terms, definitions, exclusions and conditions as London Policy 576/UF7278400 except as regards the premium, the amount and limits of liability, and except as otherwise provided in London Policy 576/UF7280600.

62. The Limits of Liability of London Policy 576/UF7280600 are $25,000,000 each Occurrence, $25,000,000 in the Aggregate in respect of Products–Completed Operations coverage, $25,000,000 in the aggregate all other coverages combined; EXCESS OF: $50,000,000 each Occurrence, $50,000,000 in the Aggregate in respect of Products–Completed