UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
WTC CAPTIVE INSURANCE COMPANY, INC., :
:
                                Plaintiff, :
:
                         v. :
:
LIBERTY MUTUAL FIRE INSURANCE :
COMPANY; CERTAIN UNDERWRITERS AT :   Civil Action No.:  07 Civ. 1209
LLOYD'S, LONDON, AND CERTAIN LONDON :
MARKET INSURANCE COMPANIES; :   District Judge Alvin K. Hellerstein
ASSICURAZIONI GENERALI S.P.A.; and :
GENERAL SECURITY INDEMNITY :   Magistrate Judge Theodore H. Katz
COMPANY OF ARIZONA, as attorney in fact for :
and successor in interest to GENERAL SECURITY :   ECF CASE
INDEMNITY COMPANY (now known as :
HUDSON SPECIALTY INSURANCE :
COMPANY), :
:
                              Defendants. :
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF THE EXCESS INSURERS' MOTION TO ADDRESS THE COURT'S SUBJECT MATTER JURISDICTION

DEWEY & LEBOEUF LLP

| | |
|---|---|
| 1101 New York Avenue, N.W., Suite 1100 | 125 West 55th Street |
| Washington, DC  20005-4213 | New York, NY  10019-5389 |
| Telephone:  (202) 986-8061 | Telephone:  (212) 424-8000 |
| Facsimile:  (202) 986-8102 | Facsimile:  (212) 424-8500 |

*Attorneys for Defendants Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona*

*Of Counsel:*

Fred W. Reinke
Larry P. Schiffer
Albert Y. Chang
Lisa A. Keenan

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................................................1

FACTS .........................................................................................................................................3

I. Background of this Action ..............................................................................................4

    A. The WTC Captive ...............................................................................................4

    B. The Excess Policies .............................................................................................4

    C. The WTC Captive's Claims in this Action .........................................................5

ARGUMENT ...............................................................................................................................6

I. The WTC Captive Does Not — and Cannot — Establish Complete Diversity Between Itself and the Excess Insurers .........................................................................6

    A. The Diversity of Citizenship Allegations for Underwriters at Lloyd's and GSINDA ...............................................................................................................6

    B. The Diversity of Citizenship Facts for Underwriters at Lloyd's and GSINDA ......7

    C. The Governing Legal Standard ...........................................................................8

    D. Application of the Governing Legal Standard to the Claims Against the Underwriters at Lloyd's .......................................................................................9

    E. Application of the Governing Legal Standard to the Claims Against GSINDA ...10

II. Under Second Circuit Precedents, this Insurance Coverage Action Appears to Fall Outside the Stabilization Act's Grant of Exclusive Jurisdiction .........................10

    A. Alleged Jurisdiction under the Stabilization Act ..............................................10

    B. The Stabilization Act Jurisdictional Grant and Its Interpretation .....................11

    C. This Action Appears to Fall Outside § 408 Because It Is an Insurance Coverage Dispute that Lacks Common Legal and Factual Issues Involving the Events of September 11, 2001 ......................................................................13

CONCLUSION ..........................................................................................................................15

## TABLE OF AUTHORITIES

**CASES**                                                                                                                      **Page(s)**

*730 Bienville Partners, Ltd. v. Assurance Co. of Am. Int'l*, No. Civ.A. 02-0106,
  2002 WL 985809 (E.D. La. Apr. 16, 2002) ................................................................13

*Advani Enters., Inc. v. Underwriters at Lloyd's*,
  140 F.3d 157 (2d Cir. 1998) ................................................................................8, 9

*Associated Aviation Underwriters v. Arab Ins. Group (B.S.C.)*, No. 02 Civ. 4983,
  2003 WL 1888731 (S.D.N.Y. Apr. 16, 2003) ............................................................13

*Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*,
  335 F.3d 52 (2d Cir. 2003) ...............................................................2, 11, 12, 13, 14

*Chadwick v. TKO Records*, No. 03 Civ. 10019, 2004 WL 885820
  (S.D.N.Y. Apr. 20, 2004) ........................................................................................10

*Combined Ins. Co. of America v. Certain Underwriters at Lloyd's, London*,
  No. 02-9089, 2003 WL 21999454 (2d Cir. Aug. 22, 2003) ............................11, 12, 13

*Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640 (N.Y. 1993) ......................................14

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
  160 F.3d 925 (2d Cir. 1998) ..........................................................................3, 7, 8, 9

*Indian Chef, Inc. v. Fire & Cas. Ins. Co. of Connecticut*, No. 02 Civ. 3401, 2004
  WL 420034 (S.D.N.Y. Mar. 9, 2004) ......................................................................13

*Int'l Fine Art & Antique Dealers Show Ltd. v. ASU Int'l, Inc.*, No. 02 Civ. 0534,
  2002 WL 1349733 (S.D.N.Y. June 20, 2002) ..........................................................13

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986) ..............................................3

*McNally v. Port Auth. of New York & New Jersey (In re WTC Disaster Site)*, 414
  F.3d 352 (2d Cir. 2005) ....................................................................................12, 13

*Napoli, Kaiser & Bern, LLP v. Wesport Ins. Corp.*, 295 F. Supp. 2d 335
  (S.D.N.Y. 2003) ......................................................................................................14

*Port Auth. of New York & New Jersey v. Allianz Ins. Co.*, 443 F. Supp. 2d 548
  (S.D.N.Y. 2006) ......................................................................................................13

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*,
  293 F.3d 579 (2d Cir. 2002) ...................................................................................10

*Velez v. Kulhmann*, No. 02 Civ. 6062, 2003 WL 22004899 (S.D.N.Y. Aug. 22, 2003) ..................................................................................................................3

*In re World Trade Ctr. Disaster Site Litig.*,
456 F. Supp. 2d 520 (S.D.N.Y. 2006)................................................................5

*In re World Trade Ctr. Disaster Site Litig.*,
467 F. Supp. 2d 372 (S.D.N.Y. 2006).........................................................12, 13

**STATUTES AND RULES**

28 U.S.C. § 1332.......................................................................................................2, 6, 8

28 U.S.C. § 1332(a)..........................................................................................................8

28 U.S.C. § 1332(a)(3)......................................................................................................6

8 U.S.C. § 1332(c)(1)......................................................................................................10

Air Transportation Safety and System Stabilization Act, Pub. L. No. 107-42
§ 408(b)(3), 115 Stat. 230 (2001), amended by Aviation and Transportation
Security Act, 107 Pub. L. No. 107-71 § 201, 115 Stat. 597 (2001).........................2, 11

FED. R. CIV. P. 10(c) .......................................................................................................4

N.Y. INS. LAW § 7005(a)(3) (McKinney 2003) ...............................................................4

Defendants Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona (collectively the "Excess Insurers") respectfully submit this Memorandum of Law in support of their motion to address the Court's subject matter jurisdiction.

## PRELIMINARY STATEMENT

In the aftermath of the tragic events of September 11, 2001, the City of New York ("the City") sought insurance coverage for the unprecedented clean-up effort set in motion that day. The Excess Insurers, who had underwritten risks associated with the World Trade Center for many years, issued two policies — Nos. 576/UF7278400 and 576/UF7280600 (collectively the "Excess Policies") — to the City and its enrolled contractors, the coverage for which would come into play only after the exhaustion of underlying primary insurance maintained by the City and its enrolled contractors. This excess coverage extends only to loss caused by an occurrence that took place at the World Trade Center clean-up site (the "WTC Site"), and excludes claims for injury caused by "pollutants," claims for any "known occurrence," and claims arising out of exposure to asbestos.

This action arises out of a dispute over the coverage provided under the Excess Policies. The action is brought not by the insured City or its enrolled contractors. It is brought, instead, by plaintiff WTC Captive Insurance Company, Inc. (the "WTC Captive"), an insurance company created by New York statute and funded by a $1 billion federal grant supporting coverage of valid claims arising out of the September 11 attack for which, at the time of the WTC Captive's creation, the City lacked sufficient insurance coverage. In its Amended Complaint, the WTC Captive asserts three claims: (1) declaratory judgment; (2) breach of fiduciary duty; and (3) equitable contribution. Amended Complaint ("Am. Compl.") at ¶¶ 107-29. Through these claims, the WTC Captive seeks to apply the Excess Policies to claims alleged in *In re World*

*Trade Center Disaster Site Litigation*, No. 21 MC 100 (AKH) (S.D.N.Y.) (the "Respiratory Claims Litigation"), even though the claims pleaded in the Respiratory Claims Litigation are excluded by the terms and conditions in the Excess Policies.

To support subject matter jurisdiction in this Court, the WTC Captive advances two theories: (1) diversity of citizenship under 28 U.S.C. § 1332; and (2) the Air Transportation Safety and System Stabilization Act (the "Stabilization Act"), a statute enacted just after September 11, 2001. *Id.* at ¶¶ 15-16. Whether the governing law sustains these alleged jurisdictional bases is subject to serious question, however.

First, diversity jurisdiction does not exist because, like the WTC Captive, some of the Excess Insurers (several of the subscribing Underwriters at Lloyd's and General Security Indemnity Company of Arizona ("GSINDA"), as attorney in fact for and successor in interest to General Security Indemnity Company (now known as Hudson Specialty Insurance Company)) are citizens of the State of New York.

Second, jurisdiction under the Stabilization Act is far from clear under the governing law. Although the Stabilization Act grants "original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001," Pub. L. No. 107-42 § 408(b)(3), 115 Stat. 230 (2001), the Second Circuit Court of Appeals has interpreted this jurisdictional grant narrowly, and has not extended the grant to insurance coverage disputes simply because they would not have arisen "but for" the events of September 11 or its aftermath. *Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 59 (2d Cir. 2003). To extend the Stabilization Act's jurisdictional grant to this action under *Canada Life*, therefore, this Court must find that the resolution of this action would involve common issues of law or fact concerning the events of

2

September 11, 2001. The WTC Captive makes such an allegation, in a conclusory manner, that its claims "result[] from or relat[e] to the terrorist-related aircraft crashes of September 11, 2001." *See* Am. Compl. at ¶ 16. But as this action appears only to be about insurance coverage, the validity of the WTC Captive's jurisdictional allegation is not at all free from doubt.

While the Excess Insurers acknowledge the efficiencies that would result from the adjudication of this action in this Court, they also recognize that the parties and this Court must take steps at the earliest stage of a litigation to avoid wasting valuable time and resources of the Court, in the event subject matter jurisdiction is absent. *See E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998) ("*Squibb*") (remanding a claim against Underwriters at Lloyd's to the district court to determine whether jurisdiction existed, despite sixteen years of litigation that culminated in a jury verdict). Accordingly, the Excess Insurers have lodged this motion to address the Court's subject matter jurisdiction, under the controlling authorities.

## FACTS

The facts below are derived from the pleadings (copies of which are submitted as exhibits to the Declaration of Larry P. Schiffer), as well as the Declaration of Sally Dunning ("Dunning Decl.") and the Declaration of Maxine Hilary Verne ("GSINDA Decl."), which the Court may consider on this motion. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) (on a motion to dismiss for lack of jurisdiction, a court may refer to evidence outside of the pleadings, such as affidavits and documentary exhibits); *see also Velez v. Kulhmann*, No. 02 Civ. 6062, 2003 WL 22004899, at *2 (S.D.N.Y. Aug. 22, 2003) (Hellerstein, J.) (district courts may refer to evidence outside the pleadings when resolving questions of jurisdiction).

I.      **Background of this Action**

   A.      **The WTC Captive**

The WTC Captive is a not-for-profit captive insurance company organized under the laws of the State of New York, with its principal place of business in New York, New York. Am. Compl. at ¶ 10. Funded by a federal grant, *id.* at ¶ 4, the WTC Captive was established to provide the City with insurance coverage retroactive to September 11, 2001, "for risks incurred by [the City] and its affiliated companies related to or arising out of activities in or near [the WTC Site]." N.Y. INS. LAW § 7005(a)(3) (McKinney 2003). To that end, the WTC Captive has allegedly "expended millions of dollars to defend the City and its contractors" in the Respiratory Claims Litigation. Am. Compl. at ¶¶ 4, 7, 82, 104.

   B.      **The Excess Policies**

The Excess Policies provide liability coverage only for the removal of the massive pile of debris that resulted from the collapse of the World Trade Center towers that ensued almost immediately after the September 11 attack. Complaint Exhibits ("Compl. Exs.") 2-3 (the Excess Policies).[1] Coverage under the Excess Policies is triggered only after the exhaustion of the primary insurance maintained by the City and its enrolled contractors. *See* Compl. Ex. 2, I. Coverage (WTCCIC 000133), III. Limits of Insurance (WTCCIC 000134-35). The Excess Policies do not provide coverage for the rescue and recovery operation that, for a time, occurred simultaneously with the debris-removal project. *See generally* Compl. Exs. 2-3. Nor do the

---

[1] Copies of the Excess Policies are attached as Exhibits 2 and 3 to the initial complaint (Dkt. No. 1 (Feb. 16, 2007)) and therefore become part of the pleadings. FED. R. CIV. P. 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes"). A copy of the initial complaint, together with the Excess Policies, is attached as Exhibit A to the Declaration of Larry P. Schiffer.

Excess Policies provide coverage for liabilities arising from the September 11 attack itself. *See id.*

Coverage under the Excess Policies is also limited by pollution, known occurrence, and asbestos exclusions. *See, e.g.*, Compl. Ex. 2, V. Exclusions (WTCCIC 000139-43), Endorsement No. 21 Known Occurrence (WTCCIC 000171). The Excess Policies exclude bodily injuries "arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants," including "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Compl. Ex. 2, Endorsement No. 15 (WTCCIC 000163-64). The complaints in the Respiratory Claims Litigation allege that pollutants caused the injuries for which the underlying plaintiffs seek recovery.

The combined indemnity coverage of the Excess Policies is subject to their retained limits and in no event exceeds $75 million of indemnity in the aggregate. *See* Compl. Exs. 2-3. The aggregate amount of potential coverage under the Excess Policies is therefore only a fraction of the $1 billion in federal funds held by the WTC Captive. *See In re World Trade Ctr. Disaster Site Litig.*, 456 F. Supp. 2d 520, 545 (S.D.N.Y. 2006) (Hellerstein, J.) (discussing the appropriation of the federal funding).

### C. The WTC Captive's Claims in this Action

In the Amended Complaint,[2] the WTC Captive advances three claims against the Excess Insurers. First, the WTC Captive alleges that the Excess Policies obligate the Excess Insurers to defend and indemnify the City and its enrolled contractors for the Respiratory Claims Litigation.

---

[2] The only substantive difference between the Amended Complaint and the initial complaint is the substitution of Odyssey Re Holdings Corp. for GSINDA as defendant. *Compare* Dkt. No. 1 at ¶ 14 (Feb. 16, 2007) *with* Dkt. No. 27 at ¶ 14 (June 11, 2007). A copy of the Amended Complaint is attached as Exhibit B to the Declaration of Larry P. Schiffer.

5

Am. Compl. at ¶¶ 107-15. Second, the WTC Captive alleges that the Excess Insurers failed to defend and indemnify the City and its enrolled contractors, and as a result breached their fiduciary duty to the WTC Captive. *Id.* at ¶¶ 120-22. Third, the WTC Captive alleges that the Excess Insurers are liable for equitable contribution for the millions of dollars that the WTC Captive has allegedly incurred in defending the City and its enrolled contractors in the Respiratory Claims Litigation. *Id.* at ¶¶ 124-29. The WTC Captive asks this Court to interpret the Excess Policies in its favor — finding coverage and holding the policies' exclusions inapplicable — and to order the Excess Insurers to pay or contribute to the past and future litigation costs for the City and its enrolled contractors in the Respiratory Claims Litigation. *See id.* at ¶¶ 1-9. This action, however, in no way affects the resolution — by way of settlement or trial — of the Respiratory Claims Litigation.

The WTC Captive's insurance coverage claims are based on state common law and do not raise any federal questions. Accordingly, to support federal subject matter jurisdiction, the WTC Captive has invoked both diversity of citizenship and the federal court jurisdiction conferred under the Stabilization Act. *Id.* at ¶¶ 15-16.

## ARGUMENT

I. **The WTC Captive Does Not — and Cannot — Establish Complete Diversity Between Itself and the Excess Insurers**

   A. **The Diversity of Citizenship Allegations for Underwriters at Lloyd's and GSINDA**

The WTC Captive's diversity jurisdiction allegation tracks the language of 28 U.S.C. § 1332:

> 15. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(3) because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

*Id.* at ¶ 15.

### (i) Underwriters at Lloyd's

The WTC Captive alleges that the Underwriters at Lloyd's defendants are citizens or subjects of a foreign state:

> 12. Upon information and belief, . . . [Underwriters at Lloyd's are] an unincorporated association of individuals who, at times relevant to this litigation, were underwriting members at Lloyd's, London, conducting insurance business, through managing agents, at Lloyd's, London, and had a principal place of business in London, England.

*Id.* at ¶ 12.

### (ii) GSINDA

The WTC Captive alleges that GSINDA's principal place of business is in Arizona:

> 14. Upon information and belief, [GSINDA] . . . is an Arizona corporation with its principal place of business in Arizona. [GSINDA] is the attorney in fact for, and successor in interest to[,] General Security Indemnity Company, now known as "Hudson Specialty Insurance Company." [GSINDA] has assumed General Security Indemnity Company's obligations and liabilities under [the Excess Policies], and is the real party in interest with respect to those policies.

*Id.* at ¶ 14.

### B. The Diversity of Citizenship Facts for Underwriters at Lloyd's and GSINDA

### (i) Underwriters at Lloyd's

What is referred to as "Lloyd's" is in actuality a marketplace at which insurance and reinsurance underwriters, grouped together in syndicates, make themselves available to provide insurance and reinsurance coverage. These "anonymous underwriters . . . are commonly referred to as 'Names.'" *Squibb*, 160 F.3d at 929. A Name can be an individual. *Id.*

Names subscribe to a percentage of the risk assumed under an insurance policy and are each severally — but not jointly — liable under the policy in the event of a loss. *Id.* The

7

syndicates in which Names are grouped themselves lack independent legal identity. *Id.* A syndicate typically appoints one Name as an Active Underwriter. *See id.* (discussing "lead underwriters"). The Active Underwriter makes the determination of risk selection and terms of coverage. *See id.* All other Names are passive syndicate subscribers. *See id.* In the event of a claim, the Active Underwriter represents the collective interest of the Names in that syndicate for each policy. *Id.*

The syndicates involved in the Excess Policies are Syndicates 102, 376, 609, 623, 1003, 1225, 1861, 2003, 2020, and 2488 at Lloyd's. Compl. Exs. 2-3, Table of Syndicates (WTCCIC 000176, 000209). A review has been performed of the citizenship of each of the members of these syndicates. Dunning Decl. at ¶ 2. At least five syndicates — 609, 623, 1003, 2020, and 2488 — have members residing in the State of New York. *Id.* at ¶¶ 3-4.

### (ii) GSINDA

GSINDA's principal place of business is New York City. GSINDA Decl. at ¶ 5.

### C. The Governing Legal Standard

Federal courts may exercise jurisdiction in civil actions between "citizens of a State and citizens or subjects of a foreign state," if the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "The party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist." *Advani Enters., Inc. v. Underwriters at Lloyd's*, 140 F.3d 157, 160 (2d Cir. 1998). For diversity jurisdiction to be available, "all of the adverse parties in a suit must be completely diverse with regard to citizenship." *Squibb*, 160 F.3d at 930.

> D. **Application of the Governing Legal Standard to the Claims Against the Underwriters at Lloyd's**

Establishing complete diversity in an action involving Lloyd's underwriters has proved challenging because of the unique structure of the Lloyd's market. In recent years, however, the Second Circuit has defined a clear set of rules for the determination of citizenship in such cases. In *Advani Enterprises*, for example, an insured sued certain Lloyd's underwriters for breach of an insurance policy. 140 F.3d at 159. Similar to the Amended Complaint here, the insured alleged only that defendants consisted of "a syndicate at Lloyd's of London operating under the laws of the United Kingdom." *Id.* at 160. The Second Circuit pointed out that by lumping the Lloyd's underwriter defendants in one conclusory allegation, the insured "overlooked the[ir] legal status." *Id.* According to the Second Circuit, the Lloyd's underwriters were "unincorporated associations" and consequently, did not "have legal identities separate from their members." *Id.* As a result, the Second Circuit held that to establish diversity jurisdiction, the insured must allege either the citizenship of the individual Lloyd's Underwriters subscribing to the insurance policy at issue or the citizenship of their lead underwriter. *Id.* at 161. Because the insured's conclusory allegation failed to meet this requirement, the court found diversity jurisdiction unavailable in *Advani Enterprises*. *Id.*

In *Advani Enterprises*, the Second Circuit "raised, but did not decide, the difficult questions involved in determining how [Lloyd's] should be analyzed for purposes of the requirements of diversity jurisdiction." *Squibb*, 160 F.3d at 928. The Second Circuit answered this question in *Squibb*, an insurance coverage dispute against, among others, certain Lloyd's Underwriters. In *Squibb*, the Second Circuit raised, *sua sponte*, the diversity jurisdiction question on an appeal of a jury verdict culminating litigation that had run for sixteen years. *Id.* After analyzing conflicting authorities from other circuits, the Second Circuit held that unless

9

one underwriter with the requisite amount in controversy is sued individually only for his or her share of the risk and on his or her own behalf, the citizenship of each subscribing individual Underwriter must be considered for determination of diversity jurisdiction. *Id.* at 931.

Under these controlling Second Circuit precedents, paragraph 12 of the Amended Complaint cannot form a basis for diversity jurisdiction. It is not brought against one Underwriter. It does not state that each of the subscribing Lloyd's Names is not a citizen of the State of New York, as it must do. Nor could this assertion be made, in view of the undisputed fact that at least five Lloyd's syndicates involved in this action — Syndicates 609, 623, 1003, 2020, and 2488 — had members residing in the State of New York in February 2007 when this action was commenced. *See* Dunning Decl. at ¶¶ 3-4.

### E. Application of the Governing Legal Standard to the Claims Against GSINDA

For diversity jurisdiction purposes, a corporation is a citizen of its state of incorporation *and* of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002); *Chadwick v. TKO Records*, No. 03 Civ. 10019, 2004 WL 885820, at *1 (S.D.N.Y. Apr. 20, 2004) (Hellerstein, J.). Here, GSINDA's principal place of business is in the State of New York. GSINDA Decl. at ¶ 5. As a result, the WTC Captive lacks a factual basis upon which complete diversity with GSINDA could be established.

### II. Under Second Circuit Precedents, this Insurance Coverage Action Appears to Fall Outside the Stabilization Act's Grant of Exclusive Jurisdiction

#### A. Alleged Jurisdiction under the Stabilization Act

The WTC Captive alleges that "[t]his Court has original and exclusive jurisdiction over this civil action pursuant to [the Stabilization Act]." Am. Compl. at ¶ 16. To support this allegation, the WTC Captive asserts that this action involves a claim (1) "resulting from or

10

relating to the terrorist-related aircraft crashes of September 11, 2001;" and (2) "raising issues of law or fact involving the events of September 11, 2001, and their immediate aftermath." *Id.*

### B. The Stabilization Act Jurisdictional Grant and Its Interpretation

The Stabilization Act provides the Southern District of New York with original and exclusive jurisdiction over a broad class of cases resulting from or relating to the September 11, 2001 attack:

> The United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) *resulting from or relating to* the terrorist-related aircraft crashes of September 11, 2001.

Pub. L. No. 107-42, § 408(b)(3), 115 Stat. 230 (2001), amended by the Aviation and Transportation Security Act, 107 Pub. L. No. 107-71, § 201, 115 Stat. 597 (2001) (emphasis supplied). Despite § 408(b)(3)'s broad language, the Second Circuit has narrowly interpreted this provision.

*Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG* is the Second Circuit's seminal decision on § 408(b)(3). There, a reinsurer sued a retrocessionaire alleging breach of quota share retrocession agreements, seeking indemnification for losses arising from the September 11 attack. *Canada Life*, 335 F.3d at 53-54. The Second Circuit held that § 408 did not apply because "the actual events of [September 11 were] irrelevant to a resolution of the dispute, even though the insurance losses were caused in part by them." *Id.* at 57. In limiting § 408's reach, the Second Circuit rejected the theory that the section "vest[ed] the Southern District of New York with jurisdiction over actions involving economic losses that would not have been suffered 'but for' the events of September 11[,] but otherwise involve[d] no claim or defense raising an issue of law or fact involving those events." *Id.* at 59.

11

Following *Canada Life*, the Second Circuit declined to extend jurisdiction to another contract dispute, *Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, No. 02-9089, 2003 WL 21999454, at **1-2 (2d Cir. Aug. 22, 2003). There, the parties disputed, among other things, whether an agreement insuring injuries sustained "on business travel" would cover injuries of evacuees at the WTC Site on September 11, 2001. *Id.* The Second Circuit held that resolution of this "narrow issue of contract interpretation [did] not require the deciding court to refer to or choose among competing descriptions of the events of September 11th itself." *Id.* at *2. Accordingly, the claims in *Combined Insurance* failed to pass the *Canada Life* muster. *Id.*

In *McNally v. Port Authority of New York & New Jersey (In re WTC Disaster Site)*, however, the Second Circuit extended § 408's jurisdictional grant to personal injury claims arising from WTC Site clean-up efforts. 414 F.3d 352, 378 (2d Cir. 2005). The Second Circuit reasoned that "the relationship between the September 11 crashes and [those personal injury claims was] considerably more extensive than [the] simple 'but for' causation" alleged in *Canada Life*. *Id.* According to the Second Circuit, resolution of those claims would require the court to "explore such common factors as the immediate need to conduct and continue searches for survivors without regard to the availability of respirators." *Id.* Because the court would "confront such individual factors as the degree to which each plaintiff was exposed to toxic substances," the personal injury claims triggered § 408's purpose for efficiency and consistency across judgments. *Id.* at 378-79. Following *McNally*, this Court extended jurisdiction over the Respiratory Claims Litigation, holding that § 408(b)(3) applied to all "types of injuries allegedly suffered in the clean-up of [the WTC Site]." *In re World Trade Ctr. Disaster Site Litig.*, 467 F. Supp. 2d 372, 373 (S.D.N.Y. 2006) (Hellerstein, J.).

### C. This Action Appears to Fall Outside § 408 Because It Is an Insurance Coverage Dispute that Lacks Common Legal and Factual Issues Involving the Events of September 11, 2001

*Canada Life* and *McNally* present the spectrum of § 408's jurisdictional breadth. On the one hand, § 408(b)(3) covers only cases involving "common issues of law or fact concerning the events of September 11, 2001" and is inapplicable to cases that are merely caused by the September 11 attack, but otherwise lack connections to the attack. *Canada Life*, 335 F.3d at 59. On the other hand, the Respiratory Claims Litigation falls squarely within § 408(b)(3). *McNally*, 414 F.3d at 379-80; *see also In re World Trade Ctr. Disaster Site Litig.*, 467 F. Supp. 2d at 373.

Viewed against this spectrum, breach of insurance contract disputes have consistently been held to fall on the *Canada Life* end and outside § 408's reach, notwithstanding that they arise from the September 11 attack. *See, e.g., Combined Ins.*, 2003 WL 21999454, at *2 (no federal jurisdiction even though contract dispute requires determination of whether "evacuation of the workplace [on September 11, 2001] qualifies as being 'on business travel'"); *Port Auth. of New York & New Jersey v. Allianz Ins. Co.*, 443 F. Supp. 2d 548, 554 (S.D.N.Y. 2006) (Mukasey, J.) (remanding insured's declaratory judgment action against insurer to state court notwithstanding the action involved insurance proceeds recoverable from the destruction resulting from the September 11 attack); *Indian Chef, Inc. v. Fire & Cas. Ins. Co. of Connecticut*, No. 02 Civ. 3401, 2004 WL 420034, at *2 (S.D.N.Y. Mar. 9, 2004) (Cote, J.) (declining exclusive jurisdiction over insured's suit against primary insurer for damages sustained as a result of the September 11 attack). Similarly, pre-*Canada Life* cases exclude insurance coverage disputes from the Stabilization Act's purview. *See Associated Aviation Underwriters v. Arab Ins. Group (B.S.C.)*, No. 02 Civ. 4983, 2003 WL 1888731, at *7 (S.D.N.Y. Apr. 16, 2003) (Daniels, J.) (citing the district court's dismissal in *Canada Life* and declining exclusive jurisdiction over a reinsurance dispute); *Int'l Fine Art & Antique Dealers Show Ltd. v. ASU Int'l,*

13

*Inc.*, No. 02 Civ. 0534, 2002 WL 1349733, at *6 (S.D.N.Y. June 20, 2002) (Cote, J.) (the Stabilization Act did not create jurisdiction over an action seeking a declaration of contractual rights under an insurance policy in a dispute caused by the government's response to the September 11 attack); *accord 730 Bienville Partners, Ltd. v. Assurance Co. of Am. Int'l*, No. Civ.A. 02-0106, 2002 WL 985809, at *2 (E.D. La. Apr. 16, 2002) (Feldman, J.) (denying defendant's motion to transfer venue to the Southern District of New York under the Stabilization Act where dispute involved insurance coverage for business losses caused by the September 11 attack).

Under the authorities cited above, this action gravitates toward the *Canada Life* end of the spectrum, where § 408(b)(3) is inapplicable, because the Amended Complaint presents a garden variety insurance coverage dispute. The Amended Complaint focuses on a discussion of the Excess Policies. *See* Am. Compl. at ¶¶ 42-62. The Amended Complaint does not allege that interpretation of the underlying policies requires inquiry into the actual events of September 11, 2001. Nor does the Amended Complaint suggest that resolution of this action would promote consistency and efficiency across judgments on cases relating to the September 11 attack. *See Canada Life*, 335 F.3d at 59 (stating the Stabilization Act's purpose of promoting consistency and efficiency).

In any event, the alleged ties between this action and the Respiratory Claims Litigation appear insufficient to justify application of the Stabilization Act under *Canada Life* and its progeny. Although the Amended Complaint identifies the Respiratory Claims Litigation, *see* Am. Compl. at ¶¶ 63-74, this action is at least one step removed from the underlying facts in the Respiratory Claims Litigation because resolution of this insurance coverage dispute would involve only the pleadings, but not any facts, in the Respiratory Claims Litigation. *See Napoli,*

*Kaiser & Bern, LLP v. Wesport Ins. Corp.*, 295 F. Supp. 2d 335, 338 (S.D.N.Y. 2003) (Koeltl, J.) ("[t]o determine whether the duty to defend exists, courts first look to 'the allegations within the four corners of the underlying complaint'"); *see also Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (N.Y. 1993) ("insurer must defend whenever the four corners of the complaint suggest — or the insurer has actual knowledge of facts establishing — a reasonable possibility of coverage").

## CONCLUSION

For the reasons set forth above, the moving defendants respectfully request that the Court address its subject matter jurisdiction over this action.

Dated:  New York, New York
        November 27, 2007

Respectfully submitted,

DEWEY & LEBOEUF LLP

By: _____s/Fred W. Reinke_____
Fred W. Reinke
1101 New York Avenue, N.W.
Suite 1100
Washington, DC 20005-4213
Telephone: (202) 986-8061
Facsimile: (202) 986-8102

Larry P. Schiffer
Albert Y. Chang
Lisa A. Keenan
125 West 55th Street
New York, NY 10019-5389
Telephone: (212) 424-8000
Facsimile: (212) 424-8500

*Attorneys for Defendants*
*Certain Underwriters at Lloyd's, London,*
*Certain London Market Insurance Companies,*
*Assicurazioni Generali S.p.A., and General*
*Security Indemnity Company of Arizona*