**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                   :     Civil Action No. 07-1209 (AKH) (THK)
WTC CAPTIVE INSURANCE COMPANY,   :
                                   :
             Plaintiff,          :     ECF CASE
                                   :
     *v.*                         :
                                   :
LIBERTY MUTUAL FIRE INSURANCE   :
COMPANY, *et al.*,                  :
                                   :
            Defendants.       :
                                   :
---------------------------------------------------------- x


**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO EXCESS INSURERS'**
**MOTION TO ADDRESS THE COURT'S SUBJECT MATTER JURISDICTION**


McDermott Will & Emery LLP

600 13th Street, NW                        340 Madison Avenue
Washington, DC 20005-3096        New York, NY 10173-1922
Telephone:  202-756-8000         Telephone:  212-547-5400
Facsimile:  202-756-8087          Facsimile:  212-547-5444

*Attorneys for Plaintiff*
*WTC Captive Insurance Company, Inc.*

*Of Counsel:*

Margaret H. Warner (*pro hac vice*)
Gregory A. Krauss (*pro hac vice*)
Mark A. Collins (*pro hac vice*)
Robert A. Weiner (RW-3381)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

    A.    Insurance Policies ........................................................................................ 2

    B.    The Disaster Site Litigation ....................................................................... 4

    C.    Citizenship of Parties in This Action ....................................................... 5

ARGUMENT .............................................................................................................. 6

I.    THIS COURT MUST EXERCISE JURISDICTION OVER THIS ACTION
    UNDER ATSSSA .............................................................................................. 7

    A.    ATSSSA Vests Jurisdiction Over Claims Raising Common Issues Of Law
        Or Fact Involving The Events Of September 11, 2001 ............................. 7

    B.    The WTC Captive's Claims Fall Within The Ambit Of ATSSSA's
        Jurisdictional Grant .................................................................................... 8

    C.    This Action is Distinguishable From Those Not Within ATSSSA's
        Jurisdictional Grant .................................................................................. 11

    D.    The Court's Exercise Of ATSSSA Jurisdiction Over This Action Promotes
        Efficiency .................................................................................................. 13

II.    DIVERSITY PROVIDES SUBJECT MATTER JURISDICTION FOR THE
    WTC CAPTIVE'S CLAIMS AGAINST THE LONDON MARKET INSURERS ....... 14

    A.    Lloyd's Can Be Sued Without Destroying Diversity-Based Subject Matter
        Jurisdiction ................................................................................................ 14

    B.    GSINDA Does Not Destroy Diversity Jurisdiction Because the Evidence
        Shows It Is an Arizona Citizen ................................................................. 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*730 Bienville Partners, Ltd. v. Assur. Co. of Am. Int'l*, No. CIV.A. 02-0106, 2002 WL 985809, at *2 (E.D. La. Apr. 16, 2002) .................................................... 13

*Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52 (2nd Cir. 2003).................................................................................. passim

*Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's, London*, 75 F. App'x 799 (2d Cir. 2003)................................................................................. 12

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154 (2d Cir. 2001) .................................. 15

*In re World Trade Ctr. Disaster Site Litig.*, 467 F. Supp. 2d 372 (S.D.N.Y 2006) ...................... 8

*Int'l Fine Art & Antique Dealers Show Ltd. v. ASU Int'l, Inc.*, No. 02 CIV. 534(DLC), 2002 WL 1349733, at *6 (S.D.N.Y. June 20, 2002) .............................................................. 13

*McNally v. Port Auth. of N.Y. & N.J.*, 414 F.3d 352 (2nd Cir. 2005) .................................. 6, 7, 8

*Port Auth. v. Allianz Ins. Co.*, 443 F. Supp. 2d 548 (S.D.N.Y. 2006)........................................ 12

*See Universal TV Distrib. Holdings LLC v. Walton*, No. 03 Civ. 9133(GBD), 2004 WL 2848528, at *3 (S.D.N.Y. Dec. 9, 2004).................................................................. 16

## INTRODUCTION

Certain Underwriters at Lloyd's, London, and certain London Market insurance companies ("Lloyd's"); Assicurazioni Generali S.p.A., and the General Security Indemnity Company of Arizona ("GSINDA") (collectively, the "London Market Insurers") have asked this Court to address whether it possesses subject matter jurisdiction over this action.  The WTC Captive Insurance Company, Inc. ("WTC Captive"), submits that the Court should resolve this issue now by exercising subject matter jurisdiction over this action on two separate grounds.

This Court has jurisdiction over this action under the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), which confers original and exclusive jurisdiction in the Southern District of New York over an expansive set of claims "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."  Pub. L. No. 107-42, § 408(b)(3), 115 Stat. 230, 241 (2001) (codified as amended at 49 U.S.C. § 40101 note).  Section 408(b)(3) provides this Court with exclusive jurisdiction over claims that raise "common issues of law or fact" involving the events of September 11, 2001.  *Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 59 (2nd Cir. 2003).  As discussed more fully below, the WTC Captive's claims raise common issues of law or fact involving the events of September 11, 2001 and their aftermath.  The policies at issue were written specifically to defend and indemnify the City and its contractors for potential claims arising from the rescue, recovery and debris removal work at the World Trade Center and related locations, and Liberty Mutual Fire Insurance Company's ("Liberty Mutual") and the London Market Insurers' defense obligations relate directly to the factual allegations made in the thousands of debris removal lawsuits before this Court under ATSSSA jurisdiction.

This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3).  As the WTC Captive averred in its Amended Complaint (Doc. No. 27, "Am.

Compl."), complete diversity exists between it and Defendants.  The presence of Lloyd's and GSINDA do not negate this averment.  Second Circuit law does not require the WTC Captive to sue *every* subscribing member of Lloyd's.  Rather, the WTC Captive can satisfy the diversity statute's requirements by suing *one* member, who is not a New York citizen and who satisfies the amount-in-controversy requirement.  To the extent the WTC Captive has misnamed the Lloyd's parties, the Court should grant leave to the WTC Captive to amend its complaint to remedy the defect.  Moreover, the only substantive evidence in the record establishes that GSINDA is not a citizen of New York.  Accordingly, diversity-based subject matter jurisdiction also exists over the WTC Captive's claims.

## FACTUAL BACKGROUND

The WTC Captive brought this lawsuit against Liberty Mutual and the London Market Insurers to enforce their obligations to defend the City of New York and additional named insureds against thousands of tort actions directly related to the events of September 11, 2001, and the ensuing debris removal efforts in New York.

### A.     Insurance Policies.

In the aftermath of the September 11, 2001, terrorist attack, the City of New York hired numerous contractors to undertake the heroic rescue, recovery, and debris removal efforts, which became known as the World Trade Center Emergency Clean-up Project.  (Am. Compl. ¶ 1.) With this clean-up project in mind, the City purchased liability insurance policies from Liberty Mutual and the London Market Insurers.  Liberty Mutual and the London Market Insurers issued the policies *specifically* to defend and indemnify the City and its contractors for potential claims arising out of the World Trade Center Emergency Clean-up Project.  In particular, Liberty Mutual issued a primary commercial general liability policy to the City covering it and the contractors as additional named insureds.  (*Id.* ¶¶ 20-22.)  Liberty Mutual's policy period

commenced on September 11, 2001, at 6:01 PM and extended to December 31, 2002.  (*Id.* ¶¶ 20-21.)  Liberty Mutual's policy's Designated Project Schedule delineates the Designated Project as the "World Trade Center Emergency Clean-up Project" and identifies the "World Trade Center," certain debris loading areas, "trucks in transit between the WTC Project Site and the Staten Island Freshkill [sic] Site," and "unloading areas at the Staten Island Freshkill [sic] Site" as "Project Site(s)."  (*Id.* ¶ 24.)

The London Market Insurers issued two layers of excess liability insurance under policy numbers 576/UF7278400 and 576/UF7280600, through which they contracted to defend and indemnify the City and the contractors for bodily injury, property damage, and personal injury claims arising out of the World Trade Center Emergency Clean-up Project.  (*Id.* ¶¶ 1, 42-62.) The coverage period under both excess policies extended from 6:00 p.m. on September 11, 2001, to December 31, 2002.  (*Id.* ¶¶ 42-43, 56-57.)  The London Market Insurers' policies similarly identified Covered Projects to include the World Trade Center site and certain debris unloading areas. (*Id.* ¶¶ 45, 61.)

The WTC Captive was created pursuant to federal enabling legislation, Public Law 108-7, to provide an insurance mechanism to protect the City and its contractors against claims arising from debris removal.  The WTC Captive insured the City and its contractors for claims arising out of "Debris Removal," which the policy defines as "the activities of the Insureds during the Exposure Period arising out of or relating to the removal of the debris at the World Trade Center Site following the collapse of buildings on September 11, 2001."  (*Id.* ¶¶ 75-76; *id.* Ex. 4  § 1.14 (WTC Captive policy).)   The WTC Captive's policy is *excess* of Underlying Insurance Amounts under valid Underlying Policies, including the policies issued by Liberty

Mutual and the London Market Insurers.  (Am. Compl. ¶¶ 77, 79.)  The coverage period under the WTC Captive's policy ran from September 11, 2001, to August 30, 2002.  (*Id.* ¶ 75.)

### B.        The Disaster Site Litigation.

Beginning in 2002, the City and certain of its contractors were named as defendants in lawsuits alleging, *inter alia*, personal and bodily injury arising from the World Trade Center Emergency Clean-up Project.  (*Id.* ¶ 63.)  These lawsuits are pending before this Court and consolidated under various civil action numbers (*e.g.*, 21 MC 100 (AKH)) (the "Disaster Site Litigation").  Plaintiffs in the Disaster Site Litigation allege personal and bodily injuries arising out of the management and supervision by the City and its contractors at the World Trade Center and loading areas during the World Trade Center Emergency Clean-up Project.  (*Id.* ¶ 66.) Specifically, the Disaster Site Litigation plaintiffs aver that the City and its contractors "carelessly, negligently, and recklessly failed to maintain a safe workplace, failed to provide workers with proper safety equipment, failed properly to monitor conditions at the site, failed to notify plaintiffs of the hazardous conditions, and failed to comply with local, state, and federal labor and safety laws."  (*Id.* ¶ 64.)

Liberty Mutual and the London Market Insurers have refused to defend the City and its contractors in the Disaster Site Litigation.  (*Id.* ¶ 3.)  Since autumn 2004, the WTC Captive has expended millions of dollars, and will continue to expend funds, to defend the City and its contractors in the Disaster Site Litigation.  (*Id.* ¶ 82.)  The WTC Captive filed this action to compel Liberty Mutual and the London Market Insurers to fulfill their defense obligations and reimburse the WTC Captive pursuant to the policies.  (*Id.* ¶ 5.)

C.      **Citizenship of Parties in This Action.**

The citizenship of several of the parties to this action are not in dispute: the WTC Captive is a citizen of New York (Am. Compl. ¶ 10), Liberty Mutual is a citizen of Massachusetts (*id.* ¶ 11), and Generali is an alien (*id.* ¶ 13).

Lloyd's is a combination of members ("Names") participating in syndicates 102, 376, 609, 623, 1003, 1225, 1861, 2003, 2020, and 2488 for the 2001 year of account that subscribed to the excess policies at issue in this case. (Am. Compl. Ex. 2 syndicate tbl.; *id.* Ex. 3 syndicate tbl.) Some (but not all) of the Names are citizens of New York. (Doc. No. 45, Dunning Decl. ¶¶ 3-4.) By definition, at least one of the Names is *not* a citizen of New York. (*See id.*) Under the excess policies in this case: "[I]n any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." (Am. Compl. Ex. 2 endorsement 18; *see also id.* Ex. 3 condition 1 ("This Policy is subject to the same terms, definitions, exclusions and conditions . . . as are contained in or as may be added to the underlying Excess Liability Policy . . . .").)[1]

GSINDA is an Arizona corporation. (Am. Compl. ¶ 14.) According to the records of the Arizona Corporation Commission, GSINDA's president and chief executive officer maintains his office in Scottsdale, Arizona. (Warner Decl. Ex. 1 at 2 (Ariz. Sec. State Rec.).) The National Association of Insurance Commissioners considers Arizona the home office of GSINDA. (Warner Decl. Ex. 2 at 1 (NAIC database search report).) On at least one occasion, GSINDA alleged in federal court that it "is an Arizona corporation with its principal place of business in Scottsdale, Arizona." (Warner Decl. Ex. 3 ¶ 1 (M.D. Ala. Compl.).)

---

[1] "Underwriters" is defined in both excess policies as the "Underwriting Members of the syndicates whose definitive numbers and proportions are shown in the Table attached hereto," and not the syndicates. (Am. Compl. Ex. 2 at 1; *id.* Ex. 3 at 1.)

**ARGUMENT**

The Court has subject matter jurisdiction over this action.  First, this Court must exercise jurisdiction over this action under ATSSSA, which confers original and exclusive jurisdiction in the Southern District of New York over an expansive set of claims "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."  ATSSSA § 408(b)(3).  Section 408(b)(3) provides this Court with exclusive jurisdiction over claims that raise "common issues of law or fact" involving the events of September 11, 2001.  *Canada Life*, 335 F.3d at 59.  The Second Circuit applied this standard to include claims by persons seeking damages for personal injuries allegedly sustained in the rescue and clean-up efforts at the World Trade Center site. *McNally v. Port Auth. of N.Y. & N.J.*, 414 F.3d 352, 377 (2nd Cir. 2005)  The WTC Captive's Amended Complaint raises issues substantially related to those raised in *McNally* by averring that the Liberty Mutual and the London Market Insurers have refused to defend the *very same* claims for injuries allegedly resulting out of the clean-up efforts at the World Trade Center site. These alleged injuries of the Disaster Site Litigation plaintiffs, as well as the insurance policies protecting the insureds against claims alleging such injuries, relate directly to the events of September 11, 2001.

Moreover, the London Market Insurers cannot dispute that common issues exist between the claims in the WTC Captive's Amended Complaint and the events of September 11, 2001, because their defenses put at issue the City's knowledge of conditions at the World Trade Center Site immediately after the World Trade Center collapse.  Specifically, they claim that the City or its contractors knew of occurrences giving rise to plaintiffs' injuries by a date certain, rendering the claims subject to an exclusion.  The London Market Insurers' defenses also put at issue the causation of plaintiff's injuries.  The London Market Insurers cannot, therefore, dispute that this action involves common issues of law or fact concerning the events of September 11, 2001.

Second, this Court has diversity jurisdiction over this action.  The WTC Captive (a New York citizen) sued Liberty Mutual (a Massachusetts citizen), Lloyd's (a collection of individuals that include New York and non-New York citizens), Generali (an alien), and the GSINDA (an Arizona citizen).  The WTC Captive's Amended Complaint can be further amended to sue only non-New York members of Lloyd's, and the record evidence is sufficient to show GSINDA is *not* a citizen of New York.  Accordingly, diversity-based subject matter jurisdiction also exists over this action.

I.   **THIS COURT MUST EXERCISE JURISDICTION OVER THIS ACTION UNDER ATSSSA.**

   A.   **ATSSSA Vests Jurisdiction Over Claims Raising Common Issues Of Law Or Fact Involving The Events Of September 11, 2001.**

ATSSSA confers original and exclusive jurisdiction in the Southern District of New York over an expansive set of claims that result from or relate to the events of September 11, 2001. Specifically, the "United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim . . . resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."  ATSSSA § 408(b)(3).  Under Second Circuit law, for jurisdiction to vest in the Southern District of New York under Section 408(b)(3), a claim must  raise "common issues of law or fact" involving the events of September 11, 2001.  *Canada Life*, 335 F.3d at 59.

This standard encompasses claims other than those made by persons present at the World Trade Center site at the time of the crashes or immediately thereafter.  Indeed, the Second Circuit has recognized that the "phrase . . . 'relat[ing] to' is clearly expansive."  *McNally*, 414 F.3d at 376 (internal quotations and citation omitted).  The *McNally* court interpreted Section 408(b)(3) to include claims by persons seeking damages for personal injuries allegedly sustained in the rescue and clean-up efforts at the World Trade Center site.

> As it requires no great stretch to view claims of injuries from inhalation of air rendered toxic by the fires, smoke, and pulverized debris caused by the terrorist-related aircraft crashes of September 11 as claims 'relating to' and 'arising out of' those crashes, we conclude that Congress intended ATSSSA's cause of action to be sufficiently expansive to cover claims of respiratory injuries by workers in sifting, removing, transporting, or disposing of that debris.

*Id.* at 377.  In fact, this Court, following *McNally*, exercised jurisdiction over the claims in the Disaster Site Litigation even though most plaintiffs allegedly sustained injuries during the debris removal rather than the actual terrorist attack on September 11, 2001.  *See In re World Trade Ctr. Disaster Site Litig.*, 467 F. Supp. 2d 372, 374 (S.D.N.Y 2006) (Hellerstein, J.) ("Plaintiffs alleging non-respiratory injuries, like those suffering respiratory injuries, raise common issues of law or fact concerning the events of September 11, 2001.").

## B.    The WTC Captive's Claims Fall Within The Ambit Of ATSSSA's Jurisdictional Grant.

The Second Circuit in *McNally* found that "claims of respiratory injuries by workers . . . sifting, removing, transporting, or disposing of . . . debris" at the World Trade Center site trigger ATSSSA jurisdiction.  *McNally*, 414 F.3d at 377.  Because the WTC Captive's claims similarly raise issues concerning injuries allegedly suffered at the World Trade Center site, its claims also trigger ATSSSA jurisdiction.  The WTC Captive filed this action to compel Liberty Mutual and the London Market Insurers to fulfill their defense obligations to the City and its contractors under insurance policies issued by Liberty Mutual and the London Market Insurers.  As explained below, these insurance policies, as well as the claims of the Disaster Site Litigation plaintiffs, relate directly to the clean-up efforts at the World Trade Center site.  This Court, therefore, has jurisdiction over this action under ATSSSA.

Liberty Mutual's and the London Market Insurers' obligations under their insurance policies result from or relate to the events of September 11, 2001.  Indeed, Liberty Mutual and

the London Market Insurers issued the policies specifically to defend and indemnify the City and its contractors against potential claims arising out of the World Trade Center Emergency Clean-up Project, such as the claims in the Disaster Site Litigation.  For example, Liberty Mutual, through its Commercial General Liability Policy No. RG2-621-004607-011, agreed to provide coverage for bodily injury, property damage, or personal injury arising out of operations performed at "Project Site(s) listed in the Designated Project Schedule."  (Am. Compl. ¶¶ 27-28.)  Liberty Mutual's Designated Project Schedule relates solely to the clean-up efforts in the aftermath of September 11, 2001.  It delineates the Designated Project as the World Trade Center Emergency Clean-up Project.  (Policy No. RG2-621-004607-011, Amendatory Endorsement Serial No. 2, at WTCCIC 000022.)  It lists the following Project Site(s):  the World Trade Center, certain debris loading areas, "trucks in transit between the WTC Project Site and the Staten Island Freshkill [sic] Site," and "unloading areas at the Staten Island Freshkill [sic] Site" as "Project Site(s)."  (Am. Compl. ¶ 24.)  It is also clear that Liberty Mutual's policy relates to the events of September 11, 2001, because its policy period commenced on September 11, 2001, at 6:01 PM and extended to December 31, 2002.  (*Id.* ¶¶ 20-21.)

Similarly, the London Market Insurers' obligations under their policies relate directly to the events of September 11, 2001 and their immediate aftermath.  For example, policy number 576/UF7278400 "provides Excess Liability Insurance in respect of the World Trade Center Emergency Clean-up Project in New York."  (Policy Number 576/UF7278400, Schedule, at WTCCIC 000129.)  Specifically, policy number 576/UF7278400 "applies to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the operations of or work performed by or on behalf of the Insured as respects the projects designated in the schedule below:

9

> World Trade Center -- Defined as the "secure" area – bounded by Broadway on the east, Albany Street and Thames Street on the south, Chambers Street on the north and the Hudson River on the west.
>
> Unloading Areas at West Side Highway and Chambers, as well as the Heliport, but only in respect of the unloading of trucks operated by insured Contractors at these locations.
>
> Unloading area at the Staten Island Freshkill site, but only in respect of the unloading of trucks operated by insured Contractors at these locations.
>
> Other sites as agreed to by Underwriters in writing.

(Policy Number 576/UF7278400, Endorsement No. 23, at WTCCIC 000173.)

The coverage period under this policy extended from 6:00 p.m. on September 11, 2001, to December 31, 2002, further indicating that the London Market Insurers issued this policy to defend and indemnify the City and its Contractors against claims arising out of the clean-up efforts in the aftermath of September 11, 2001. (Am. Compl. ¶¶ 42-43.) The London Market Insurers' policy number 576/UF7280600 is subject to the same terms and conditions as policy number 576/UF7278400. (*Id.* ¶ 61.)

The WTC Captive's lawsuit seeks a declaration of rights and obligations under Liberty Mutual's and the London Market Insurers' insurance policies and seeks to compel Liberty Mutual and the London Market Insurers to fulfill their duty to defend the City and its contractors against the claims in the Disaster Site Litigation. Resolution of the issues in the WTC Captive's lawsuit depends in part upon the characterization of the claims in the Disaster Site Litigation, because the duty to defend is determined by analysis of the underlying complaints. The Disaster Site Litigation plaintiffs aver that the City and its contractors "carelessly, negligently, and recklessly failed to maintain a safe workplace, failed to provide workers with proper safety equipment, failed properly to monitor conditions at the site, failed to notify plaintiffs of the

hazardous conditions, and failed to comply with local, state, and federal labor and safety laws."
(*Id*. ¶ 64.)  The Disaster Site Litigation plaintiffs averred further that "the careless, negligent, and
reckless failures on the part of the City and its contractors resulted in the claimants' injuries . . .
."  (*Id*. ¶ 65.).  These claims, like those in *McNally*, relate to the clean-up efforts at the World
Trade Center site.  Because the WTC Captive's claims relate directly to the claims of the
Disaster Site Litigation plaintiffs, this action involves common issues of law or fact concerning
the events of September 11, 2001.

Moreover, the London Market Insurers advocate the existence of common issues of law
and fact by asserting certain affirmative defenses.  For example, the London Market Insurers put
at issue the City's and contractors' knowledge of conditions at the World Trade Center Site
immediately after the World Trade Center collapse, claiming that the City or its contractors knew
of occurrences giving rise to plaintiffs' injuries by a date certain, rendering the claims subject to
a known occurrence exclusion.  ( Doc. No. 32, London Market Insurers' Amended Answer and
Affirmative Defenses ¶ 146.)  Certainly the City's and contractors' knowledge of conditions at
the site is at issue in the debris removal cases.  The London Market Insurers also put at issue in
this action causation of the underlying plaintiff's injuries, asserting that there is no duty to defend
due to asbestos and pollution exclusions in their policies.  *Id*.  Causation of plaintiffs' injuries is
an issue in the debris removal litigation.

**C.    This Action is Distinguishable From Those Not Within ATSSSA's
Jurisdictional Grant.**

The London Market Insurers ignore these common issues of law and fact in their motion
and describe this action as "a garden variety insurance coverage dispute," over which ATSSSA
does not extend subject matter jurisdiction.  (Excess Insurers' Mot. 13-14 (citing cases).)  This
superficial characterization overlooks the true nature of this action.  As noted, the WTC

11

Captive's claims cannot be resolved without looking to and understanding the factual allegations of the Disaster Site Litigation, over which the Court has exercised subject-matter jurisdiction pursuant to ATSSSA.

The cases on which the London Market Insurers rely are readily distinguishable from this action, as none of them involve insurance obligations directly related to factual allegations that trigger ATSSSA jurisdiction.  The policies in non-ATSSSA jurisdiction cases were not issued in response to September 11, 2001.  Accordingly, in these cases, "[w]hether the losses were the result of the events of September 11, ordinary mortality, common fires, refinery explosions, auto accidents, or a flu epidemic is irrelevant to [the] action.  *Canada Life*, 333 F.3d at 57.  In contrast, the policies issued by Liberty Mutual and the London Market Insurers were written specifically to defend and indemnify the City and its contractors for bodily injury, property damage, and personal injury claims arising out of the aftermath of September 11, 2001 during the World Trade Center Emergency Clean-up Project – the exact claims the *McNally* court already found to be within the ambit of ATSSSA jurisdiction.

Unlike *Canada Life* and the other cases on which the London Market Insurers rely, the WTC Captive's claims require reference to factual allegations "that concerns the events of September 11."  *Contra* 335 F.3d at 57; *Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's, London*, 75 F. App'x 799, 801 (2d Cir. 2003) (no ATSSSA jurisdiction because reinsurance dispute turned on whether evacuation of buildings on September 11 constituted "business travel" and did "not require the . . . court to refer to . . . descriptions of the *events* of September 11th itself"); *Port Auth. v. Allianz Ins. Co.*, 443 F. Supp. 2d 548, 554 (S.D.N.Y. 2006) (no ATSSSA jurisdiction because insurance dispute turned on whether 2006 framework for redeveloping the WTC site affects insurers obligation to compensate their insurers and "does not

require this court to revisit what happened on 9/11"); *Int'l Fine Art & Antique Dealers Show Ltd. v. ASU Int'l, Inc.*, No. 02 CIV. 534(DLC), 2002 WL 1349733, at *6 (S.D.N.Y. June 20, 2002) (no ATSSSA jurisdiction because events cancellation insurance dispute turned on whether post-September 11 takeover of planned event site triggered insurance obligations and was "too remote from the terrorist attacks of September 11 to come within [ATSSSA's] reach"); *730 Bienville Partners, Ltd. v. Assur. Co. of Am. Int'l*, No. CIV.A. 02-0106, 2002 WL 985809, at *2 (E.D. La. Apr. 16, 2002) (ATSSSA jurisdiction does not extend to property dispute involving New Orleans hotels claiming closing of airports triggered business interruption coverage).   ATSSSA jurisdiction does not reach cases in which, as the court in *Canada Life* explained, "the actual events of [September 11, 2001] are irrelevant to a resolution of the dispute, even though the insurance losses were caused in part by them."   333 F.3d at 57.   The WTC Captive's instant action is distinguishable because it involves policies written specifically to address potential liability in the immediate aftermath of the September 11th attacks.

###    D.    The Court's Exercise Of ATSSSA Jurisdiction Over This Action Promotes Efficiency.

The factual allegations in the Disaster Site Litigation are extensive and have evolved significantly with the guidance of the Court in the past three years.   As the Court knows, the Disaster Site Litigation plaintiffs choose among several master complaints to which their claims relate and "check off" the allegations that apply to them.   The Court's unparalleled familiarity with these allegations—which determine Liberty Mutual's and the London Market Insurers' defense obligations—makes the exercise of ATSSSA jurisdiction efficient as well as proper.   As the Second Circuit explained in *Canada Life*, the purpose of Section 408(b)(3) was to promote "efficiency in resolving the many expected actions arising from the events of September 11." 335 F.3d at 58.   The court in *Canada Life* further explained that Section 408(b)(3) avoids "the

undesirable effects that litigation of September 11 claims in the various state and federal courts would inevitably produce." *Id*. at 59.  Because this action involves common issues of law or fact concerning the events of September 11, 2001—issues with which this Court is deeply familiar— it would be efficient for this Court to exercise jurisdiction.

## II.     DIVERSITY PROVIDES SUBJECT MATTER JURISDICTION FOR THE WTC CAPTIVE'S CLAIMS AGAINST THE LONDON MARKET INSURERS.

Diversity-based subject matter jurisdiction also exists over the WTC Captive's claims. The London Market Insurers contend that Lloyd's and GSINDA destroy diversity jurisdiction. (Excess Insurers' Mot. 9-10.)   Neither contention justifies dismissal of the WTC Captive's claims against the London Market Insurers, because the jurisdictional infirmity of the current complaint, if any, can be remedied through amendment of the pleadings and evidence exists to sustain the WTC Captive's allegation that GSINDA is a citizen of Arizona.

### A.     Lloyd's Can Be Sued Without Destroying Diversity-Based Subject Matter Jurisdiction.

The parties sued by the WTC Captive as Lloyd's are the individuals and entities subscribing to the excess policies ("Names") as members of syndicates 102, 376, 609, 623, 1003, 1225, 1861, 2003, 2020, and 2488 for the 2001 year of account.   (Am. Compl. Ex. 2 syndicate tbl.; *id.* Ex. 3 syndicate tbl.)  The London Market Insurers suggest that Lloyd's cannot be sued in federal court by the WTC Captive because *some* (but not all) subscribing members of syndicates 609, 623, 1003, 2020, and 2488 reside in New York.  (Dunning Decl. ¶¶ 3-4.)  According to the London Market Insurers, this destroys diversity jurisdiction as to Lloyd's.

The problem identified by the London Market Insurers, however, can be surmounted by amending the complaint to sue one or more subscribing non-New York resident Names of the relevant syndicates that satisfy the statutory amount in controversy requirement.  Indeed, that is

exactly how the plaintiff solved the problem in *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 164 (2d Cir. 2001), in which the Second Circuit affirmed the exercise of diversity-based subject matter jurisdiction over *one* of the subscribing members of Lloyd's.  The meaning of the *Squibb* ruling is that the WTC Captive need not sue *every* subscribing member to obtain (eventually) full relief.  Critical to the *Squibb* decision was that "the record clearly establishe[d] that as a matter of contract and the rules of Lloyd's, a judgment [in this country] against [an individual Name] will be honored by the other Names."  *See id.* at 161 (internal quotation omitted and second alteration in original).  The language binding absent subscribing members to a judgment obtained against any one of them is present in both excess policies: "[I]n any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal."  (Am. Compl. Ex. 2 endorsement 18; *see also id.* Ex. 3 condition 1 ("This Policy is subject to the same terms, definitions, exclusions and conditions . . . as are contained in or as may be added to the underlying Excess Liability Policy . . . .").)

Accordingly, rather than dismissing the WTC Captive's claims against the London Market Insurers, the Court should permit the WTC Captive to further amend its complaint to substitute for Lloyd's an appropriate subscribing member of a relevant syndicate.[2]

**B.    GSINDA Does Not Destroy Diversity Jurisdiction Because the Evidence Shows It Is an Arizona Citizen.**

The London Market Insurers challenge the WTC Captive's allegation that GSINDA's principal place of business is Arizona with the conclusory testimony that "GSINDA . . . has its

---

[2] Under the Federal Rules of Civil Procedure, leave to amend should be given "freely . . . when," as here, "justice so requires" to preserve the Court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 15(a)(2); *see also Squibb*, 241 F.3d at 163 (appropriate to drop dispensable non-diverse parties to preserve diversity jurisdiction rather than dismiss claims).

principal place of business in New York, New York," and, therefore, is a New York citizen. (Excess Insurers' Mot. 10; Doc. No. 46, Verne Decl. ¶ 5.)  In light of the evidence from publicly-available sources *and GSINDA itself* showing that *Arizona* is its principal place of business, the London Market Insurers' conclusory declaration is insufficient to defeat diversity jurisdiction. *See Universal TV Distrib. Holdings LLC v. Walton*, No. 03 Civ. 9133(GBD), 2004 WL 2848528, at *3 (S.D.N.Y. Dec. 9, 2004).

The evidence of GSINDA's principal place of business comes from several sources. First, the records of the Arizona Corporation Commission show that the GSINDA's highest corporate officer, its president and chief executive officer, maintains his office in Scottsdale, Arizona, and not in New York.  (*See* Warner Decl. Ex. 1 at 2.)  Second, the National Association of Insurance Commissioners considers the home office of GSINDA to be Arizona and not New York.  (Warner Decl. Ex. 2 at 1.)  Finally, GSINDA has alleged in federal court, for the purpose of establishing diversity-based subject matter jurisdiction, that it "is an Arizona corporation *with its principal place of business in Scottsdale, Arizona.*"   (Warner Decl. Ex. 3 ¶ 1 (emphasis added).)  Against the lack of real evidence provided by the London Market Insurers on this point, this is more than enough evidence to sustain the WTC Captive's allegation that GSINDA is an Arizona citizen and, therefore, diverse from the WTC Captive.

## CONCLUSION

The WTC Captive's action involves common issues of law or fact concerning the events of September 11, 2001, complete diversity exists between the non-Lloyd's parties, and the Amended Complaint can be further amended to sue a diverse Name rather than Lloyd's.  For the reasons stated herein, the Court should exercise subject matter jurisdiction over this action.

Dated:  December 11, 2007

McDERMOTT WILL & EMERY LLP

By:     /s _____
Margaret H. Warner (*pro hac vice*)
Gregory A. Krauss (*pro hac vice*)
Mark A. Collins (*pro hac vice*)
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W.
Washington, DC  20005-3096
202-756-8000

Robert A. Weiner (RW-3381)
340 Madison Avenue
New York, NY 10173-1922
212-547-5400

Attorneys for Plaintiff
WTC Captive Insurance Company, Inc.