**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ x
WTC CAPTIVE INSURANCE COMPANY, INC., :

                            Plaintiff, :

              v. :

LIBERTY MUTUAL FIRE INSURANCE :
COMPANY; CERTAIN UNDERWRITERS AT :
LLOYD'S, LONDON, AND CERTAIN LONDON :
MARKET INSURANCE COMPANIES; :
ASSICURAZIONI GENERALI S.P.A.; and :
GENERAL SECURITY INDEMNITY :
COMPANY OF ARIZONA, as attorney in fact for :
and successor in interest to GENERAL SECURITY :
INDEMNITY COMPANY (now known as :
HUDSON SPECIALTY INSURANCE :
COMPANY), :

                   Defendants. :
------------------------------------------------------------ x

Civil Action No.:  07 Civ. 1209

District Judge Alvin K. Hellerstein

Magistrate Judge Theodore H. Katz

**NOTICE OF APPEAL**

ECF CASE



FILED U.S. DC
JUN 04 2008
S.D. OF N.Y.

        Notice is hereby given that Defendants Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali S.p.a., and General Security Indemnity Company of Arizona (collectively, the "Underwriters"), hereby appeal to the United States Court of Appeals for the Second Circuit from the following judgment, orders and opinions:

     1.       This Court's Final Judgment, signed and filed on May 27, 2008, and May 22, 2008, and entered in this action on May 30, 2008, and May 28, 2008, (i) declaring that Underwriters have an on-going duty to defend the City of New York and its contractors in the personal injury actions arising out of the World Trade Center clean-up effort, consolidated under the 21 MC 100 docket number (the "Underlying Litigation"); (ii) ordering and enjoining Underwriters to pay

prospectively all attorneys fees and expenses to defend the City of New York and

its contractors in the Underlying Litigation; and (iii) ordering that the WTC

Captive (the "WTC Captive") recover from Underwriters for past defense costs

paid to defend the City of New York and its contractors from June 7, 2006

through April 30, 2008;

2.      This Court's Opinion Declaring Insurers' Duty to Defend, signed and entered in

this action on April 15, 2008, providing a fuller explanation of the rulings made in

the Court's March 21, 2008 Order;

3.      This Court's Summary Order Granting Plaintiff's Motion for Partial Summary

Judgment and Denying Defendants' Cross Motion for Summary Judgment, signed

and entered in this action on March 21, 2008, granting the WTC Captive's motion

for partial summary judgment, and ruling that Underwriters have an on-going

duty to defend the City of New York and its contractors in the Underlying

Litigation;

4.      This Court's Order Denying Defendants' Motion to Reconsider Subject Matter

Jurisdiction, signed on March 19, 2008, and entered in this action on March 20,

2008;

5.      This Court's Order, signed on December 14, 2007, and entered in this action on

December 17, 2007, denying Underwriters' Motion to Address the Court's

Subject Matter Jurisdiction;

6.    This Court's Order, signed December 10, 2007, filed December 11, 2007, and

entered in this action on December 12, 2007, denying Underwriters' Motion for

Reconsideration of the Court's Order Granting Intervention; and

7.    This Court's Order, signed and entered in this action on November 21, 2007,

granting the Motion to Intervene.

Dated:   New York, New York          DEWEY & LeBOEUF LLP
         June 4, 2008

                                     By: _____
                                         Fred W. Reinke
                                         1101 New York Avenue, N.W.
                                         Suite 1100
                                         Washington, DC  20005-4213
                                         Telephone:  (202) 986-8061
                                         Facsimile:  (202) 986-8102

                                         Larry P. Schiffer
                                         Lisa A. Keenan
                                         1301 Avenue of the Americas
                                         New York, NY  10019
                                         Telephone:  (212) 259-8000
                                         Facsimile:  (212) 259-6333

                                     *Attorneys for Defendants*
                                     *Certain Underwriters at Lloyd's, London,*
                                     *Certain London Market Insurance Companies,*
                                     *Assicurazioni Generali S.p.A., and General*
                                     *Security Indemnity Company of Arizona*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                                                         :   Civil Action No. 07-1209 (AKH) (THK)
WTC CAPTIVE INSURANCE COMPANY,                           :
                                                         :
              Plaintiff,                                 :   ECF CASE
                                                         :
      v.                                                 :   FINAL JUDGMENT
                                                         :   USDC SDNY
LIBERTY MUTUAL FIRE INSURANCE                            :   DOCUMENT
COMPANY, et al.,                                         :   ELECTRONICALLY FILED
                                                         :   DOC #: _____
              Defendants.                                :   DATE FILED: 5/27/08
-------------------------------------------------------- x

         All claims have been resolved as to all parties.  Accordingly, Final Judgment is hereby

entered as follows:

    1.     Liberty Mutual Fire Insurance Company, Inc., having settled its obligations with

           the WTC Captive Insurance Company, Inc., and with consent of the Plaintiff-

           Intervenors, was dismissed with prejudice as to all counts and claims by Order

           entered January 7, 2008.  Dkt. No. 71.  That dismissal fully adjudicates the WTC

           Captive's First Claim for Relief (Declaratory Judgment Against Liberty Fire),

           Third Claim for Relief (Breach of Fiduciary Duty Against Liberty Fire), and Fifth

           Claim for Relief (Equitable Contribution Against Liberty Fire).

    2.     The WTC Captive has dismissed with prejudice its Fourth Claim For Relief

           (Breach of Fiduciary Duty Against the London Insurers).  Stipulation of Dismissal

           of Plaintiff WTC Captive Insurance Company, Inc.'s Fourth Claim For Relief

           Alleging Breach Of Fiduciary Duty Against The London Insurers  Dkt. No. 119.

    3.     Judgment is entered in the WTC Captive Insurance Company, Inc.'s favor on the

           WTC Captive's Second Claim for Relief (Declaratory Judgment Against the

London Insurers).   The Court hereby declares that defendants Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona (collectively the "London Insurers") have an on-going duty to defend the City of New York and its contractors in the personal injury cases arising out of the World Trade Center clean-up effort, consolidated under the 21 MC 100 docket number, for the reasons stated in my Order dated March 21, 2008 (Dkt. No. 95) and Opinion dated April 15, 2008 (Dkt. No. 112).   The London Insurers' duty to defend extends from the date that the underlying insurance policy issued by Liberty Mutual Fire Insurance Company was exhausted until the policy limits of the London Insurers are exhausted by payment of judgments or settlements.

4.  In accord with the Court's declaration that the London Insurers have an on-going duty to defend, defendants Certain Underwriters at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona are hereby ordered and enjoined to pay prospectively all attorneys fees and expenses to defend the City of New York and its contractors in the personal injury cases arising out of the World Trade Center clean-up effort, consolidated under the 21 MC 100 docket number, and to continue doing so until the policy limits of the London Insurers are exhausted by payment of judgments or settlements.   On a going forward basis, London Insurers shall reimburse the WTC Captive all monthly attorneys fees and expenses incurred by the WTC Captive to defend the City of New York and its contractors within 30 days of receiving notice and supporting documentation.   London

Insurers shall have the right to contest whether those particular monthly attorneys fees and expenses incurred by the WTC Captive fall within the scope of the duty to defend as delineated in this Final Judgment or applicable law.

5.  It is ordered that the plaintiff WTC Captive Insurance Company, Inc., recover on its Sixth Claim for Relief (Equitable Contribution Against the London Insurers) from the defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies; Assicurazioni Generali S.p.A.; and General Security Indemnity Company of Arizona the amount of $73,400,000.00, representing those defendants' obligation for past defense costs paid by the WTC Captive to defend the City of New York and its contractors from June 7, 2006 through April 30, 2008. The parties have stipulated to the judgment amount to be paid by the London Insurers to the WTC Captive and the London Insurers cannot challenge this judgment amount of $73,400,000.00 or its reasonableness on appeal; provided, however, that the London Insurers' right to appeal the determination of liability reflected in this judgment is reserved. Post-judgment interest shall accrue on the total judgment sum as prescribed by 28 U.S.C. § 1961.

6.  Plaintiff-Intervenors, all of whom are plaintiffs in the 21 MC 100 cases, were permitted to intervene by endorsed Order entered November 21, 2007. Dkt. No. 38. Plaintiff-Intervenors adopted the WTC Captive's complaint. Dkt. No. 36-2. Full adjudication of each of the WTC Captive's six claims for relief necessarily disposes of each of the Plaintiff-Intervenors' claims in this action.

7.  Each party shall bear its own respective costs and attorneys' fees in connection with this matter.

8.    All other claims for relief in the WTC Captive Insurance Company Inc.'s
Amended Complaint (Dkt. No. 27) and all claims by Plaintiff-Intervenors that
have not previously been denied or dismissed, if any, are hereby denied and
dismissed.

SO ORDERED.

Dated:      May 27, 2008
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:                            │
│ DATE FILED: 5/22/08               │
└──────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- x

WTC CAPTIVE INSURANCE COMPANY,     :

          Plaintiff,            :

      v.                         :

LIBERTY MUTUAL FIRE INSURANCE      :
COMPANY, et al.,

          Defendants.          :

------------------------------------------------- x

Civil Action No. 07-1209 (AKH) (THK)

ECF CASE

**FINAL JUDGMENT**

      All claims have been resolved as to all parties.  Accordingly, Final Judgment is hereby entered as follows:

     1.     Liberty Mutual Fire Insurance Company, Inc., having settled its obligations with the WTC Captive Insurance Company, Inc., and with consent of the Plaintiff-Intervenors, was dismissed with prejudice as to all counts and claims by Order entered January 7, 2008.  Dkt. No. 71.  That dismissal fully adjudicates the WTC Captive's First Claim for Relief (Declaratory Judgment Against Liberty Fire), Third Claim for Relief (Breach of Fiduciary Duty Against Liberty Fire), and Fifth Claim for Relief (Equitable Contribution Against Liberty Fire).

     2.     The WTC Captive has dismissed with prejudice its Fourth Claim For Relief (Breach of Fiduciary Duty Against the London Insurers).  Stipulation of Dismissal of Plaintiff WTC Captive Insurance Company, Inc.'s Fourth Claim For Relief Alleging Breach Of Fiduciary Duty Against The London Insurers  Dkt. No. 119.

     3.     Judgment is entered in the WTC Captive Insurance Company, Inc.'s favor on the WTC Captive's Second Claim for Relief (Declaratory Judgment Against the

London Insurers).    The Court hereby declares that defendants Certain

Underwriters at Lloyd's, London, Certain London Market Insurance Companies,

Assicurazioni Generali S.p.A., and General Security Indemnity Company of

Arizona (collectively the "London Insurers") have an on-going duty to defend the

City of New York and its contractors in the personal injury cases arising out of

the World Trade Center clean-up effort, consolidated under the 21 MC 100 docket

number, for the reasons stated in my Order dated March 21, 2008 (Dkt. No. 95)

and Opinion dated April 15, 2008 (Dkt. No. 112).  The London Insurers' duty to

defend extends from the date that the underlying insurance policy issued by

Liberty Mutual Fire Insurance Company was exhausted until the policy limits of

the London Insurers are exhausted by payment of judgments or settlements.

4.      In accord with the Court's declaration that the London Insurers have an on-going

duty to defend, defendants Certain Underwriters at Lloyd's, London, Certain

London Market Insurance Companies, Assicurazioni Generali S.p.A., and General

Security Indemnity Company of Arizona are hereby ordered and enjoined to pay

prospectively all attorneys fees and expenses to defend the City of New York and

its contractors in the personal injury cases arising out of the World Trade Center

clean-up effort, consolidated under the 21 MC 100 docket number, and to

continue doing so until the policy limits of the London Insurers are exhausted by

payment of judgments or settlements.  On a going forward basis, London Insurers

shall reimburse the WTC Captive all monthly attorneys fees and expenses

incurred by the WTC Captive to defend the City of New York and its contractors

within 30 days of receiving notice and supporting documentation.    London

Insurers shall have the right to contest whether those particular monthly attorneys fees and expenses incurred by the WTC Captive fall within the scope of the duty to defend as delineated in this Final Judgment or applicable law.

5.  It is ordered that the plaintiff WTC Captive Insurance Company, Inc., recover on its Sixth Claim for Relief (Equitable Contribution Against the London Insurers) from the defendants Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies; Assicurazioni Generali S.p.A.; and General Security Indemnity Company of Arizona the amount of $73,400,000.00, representing those defendants' obligation for past defense costs paid by the WTC Captive to defend the City of New York and its contractors from June 7, 2006 through April 30, 2008. The parties have stipulated to the judgment amount to be paid by the London Insurers to the WTC Captive and the London Insurers cannot challenge this judgment amount of $73,400,000.00 or its reasonableness on appeal; provided, however, that the London Insurers' right to appeal the determination of liability reflected in this judgment is reserved. Post-judgment interest shall accrue on the total judgment sum as prescribed by 28 U.S.C. § 1961.

6.  Plaintiff-Intervenors, all of whom are plaintiffs in the 21 MC 100 cases, were permitted to intervene by endorsed Order entered November 21, 2007. Dkt. No. 38. Plaintiff-Intervenors adopted the WTC Captive's complaint. Dkt. No. 36-2. Full adjudication of each of the WTC Captive's six claims for relief necessarily disposes of each of the Plaintiff-Intervenors' claims in this action.

7.  Each party shall bear its own respective costs and attorneys' fees in connection with this matter.

8.    All other claims for relief in the WTC Captive Insurance Company Inc.'s Amended Complaint (Dkt. No. 27) and all claims by Plaintiff-Intervenors that have not previously been denied or dismissed, if any, are hereby denied and dismissed.

    SO ORDERED.

Dated:        May 22, 2008
              New York, New York


                              _____
                              ALVIN K. HELLERSTEIN
                              United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x

WTC CAPTIVE INSURANCE COMPANY, INC.,        :        **OPINION DECLARING**
                                            :        **INSURERS' DUTY TO**
                           Plaintiff,       :        **DEFEND**
       -against-                            :
                                            :
LIBERTY MUTUAL FIRE INSURANCE COMPANY;      :        07 Civ. 1209 (AKH)
CERTAIN UNDERWRITERS AT LLOYD'S, AND        :
CERTAIN LONDON MARKET INSURANCE             :
COMPANIES; ASSICURAZIONI GENERALI S.P.A.;   :
and GENERAL SECURITY INDEMNITY COMPANY      :
OF ARIZONA, as attorney in fact for and successor in :
interest to GENERAL SECURITY INDEMNITY      :
COMPANY (now known as HUDSON SPECIALTY      :
INSURANCE COMPANY),                         :
                                            :
                           Defendants.      :
                                            :
---------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

         The parties to this lawsuit—the City's insurance carriers of the 9/11 clean-

up work—are engaged in a second phase of their dispute: which carriers, if any, and in

which order, are required to defend the City and its contractors against the lawsuits of

those who performed the clean-up work and claim they were injured because they were

not provided with a safe work place or proper safety equipment. By my decisions of

December 14, 2007 and March 19, 2008, I held that I have jurisdiction to hear the

dispute. WTC Captive Ins. Co. v. Liberty Mut. Fire Ins. Co., -- F. Supp. 2d --, No. 07

Civ. 1209 (AKH), 2008 WL 748405 (S.D.N.Y. Mar. 19, 2008).

         WTC Captive Insurance Company, Inc. ("WTC Captive"), a not-for-profit

captive insurance company funded by a grant from the Federal Emergency Management

Agency, is the plaintiff. It sues for a declaration that two syndicates of Lloyd's

underwriters—defendants Certain Underwriters at Lloyd's, London, Certain London

1

Market Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona (collectively the "Excess Insurers" or "London Insurers")—owe a duty to defend the City and its contractors against the suits of the clean-up workers, approximately 10,000 in number. WTC Captive also seeks equitable contribution and reimbursement for having assumed the defense obligations when the Lloyd's underwriters failed and refused to do so.

The London Insurers had issued their policies to the City following the September 11 attacks. They claim in the lawsuit brought by WTC Captive that they have no obligation to pay, either for defense or for ultimate liability costs, under the terms of their policies.

The parties moved and cross-moved for summary judgment on the issue of the insurers' obligation to defend the City and its contractors. I decided in favor of WTC Captive at the conclusion of oral argument, on March 19, 2008. On March 21, 2008, I issued a summary order granting WTC Captive's partial motion for summary judgment and denying defendants' cross-motion for summary judgment. I write now to provide a fuller explanation of my rulings.

### The City's Insurance Program

In the wake of the September 11 attacks on the World Trade Center, and in connection with the massive job that lay ahead to clear the debris of the attacks, the City sought and obtained insurance protection. Protection in the amount of $77 million was obtained, arranged in several layers.

Liberty Mutual Fire Insurance Company ("Liberty Mutual"), a Massachusetts company with its principal place of business in Boston, retroactively

engaged to be the primary carrier.[1] The policy provided $4 million aggregate coverage to "defend and indemnify the City and its contractors against claim of bodily injury, property damage, personal injury or advertising injury" occurring in connection with the World Trade Center clean-up effort, and covered the period from September 11, 2001 to December 31, 2002. The policy imposed a duty on Liberty Mutual to defend the insureds up to the indemnity limits of the policy. The policy was subject to a number of standard exclusions, including an exclusion for "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'".

The City contracted also for excess coverage in the London market, arranging the next $75 million layer of coverage with various syndicates at Lloyd's, joined by Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona (collectively the "London Insurers" or the "Excess Insurers"). Two policies were obtained, the first, contracted for on October 5, 2001, for $50 million of coverage, and the second, contracted for on January 9, 2002, for $25 million of coverage. Like the primary coverage provided by Liberty, the excess coverage provided by the London Insurers undertook to "defend and indemnify the City and its contractors against claims of bodily injury, property damage, personal injury or advertising injury" arising from the clean-up efforts at the World Trade Center covering the period from September 11, 2001 to December 31, 2002. The policies covered the City against the expense of defending the claims and lawsuits brought against it, with the costs of such defense to be additional to, and not subtracted from, the City's liability and loss. The London Insurers' policy

---

[1] WTC Captive and Liberty Fire have settled their issues. See Order Dismissing Defendant Liberty Mutual Fire Insurance Company, dated January 4, 2008.

also contained various standard exclusions, including a pollution exclusion barring coverage for bodily injury, property damage or personal injury "arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world". The policy also contained exclusions for bodily injury, property damage or personal injury resulting from asbestos and for occurrences of which the insureds had knowledge or should have been aware prior to October 3, 2001. The London Insurers' liability arises upon the exhaustion of the Liberty Mutual policy, and in excess of the insured's retained limit of $250,000 per occurrence. The London policies provide, further, that the retained limit applies only to the insurance risk, the duty to pay, and not to the duty to defend. Thus, the policies assure that the City will not have to defend itself or its contractors during the period of retention, after Liberty Mutual's obligation to pay ends, and the London Insurers' obligations to pay begin. The London Insurers' duty to defend begins when that of Liberty Mutual ends, and continues until the policy limits of the London Insurers are exhausted.

Approximately two years after obtaining the Liberty Mutual and London Insurance policies, on December 3, 2004, the City obtained additional protection for itself and its contractors from the Federal Emergency Management Agency ("FEMA"). Funded by a grant from FEMA, the City formed a not-for-profit, captive insurance company—WTC Captive Insurance Company ("WTC Captive")—to protect the City and its contractors against loss, liability and expense that exceeded the City's existing insurance protection. The WTC Captive received approximately $1 billion in funds via a grant from FEMA to insure the City and its contractors and consultants against claims arising in connection with the World Trade Center clean-up effort.

The WTC Captive policy, like the Liberty Mutual and Lloyd's policies, provides for a duty to defend the insureds. The duty is to begin when the defense obligation of the underlying Liberty Mutual and Lloyd's policies are satisfied, and is to continue until its insurance limits (its duty to pay) is exhausted. The Liberty Mutual policy and both London Insurers' policies are listed as underlying policies in Schedule B of the WTC Captive policy. However, unlike those policies, the WTC Captive policy does not contain an exclusion clause for pollution-caused damages.

### The Prior Proceedings

Beginning in 2002 and continuing to the present, more than 10,000 of those who worked at the World Trade Center site have filed suits against the City and its contractors, alleging respiratory illness, various cancers, and other injuries, and claiming that the City and its contractors caused those injuries by failing to provide adequate protective equipment and otherwise assure the safety of their work place. The City and the Contractors made demand upon its insurance carriers to defend it in such suits, but only WTC Captive responded affirmatively, beginning in the fall of 2004. All the lawsuits are pending in this court, pursuant to the exclusive jurisdiction provisions of the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101, ("ATSSSA"), Section 408(b)(3), and were assigned to me. They are consolidated for coordinated pre-trial discovery. See The World Trade Center Disaster Site Litigation, 21 MC 100.

Beginning in October 2002, and at regular intervals thereafter, the City and its contractors provided notice to the London Insurers via Willis of New York, Inc. ("Willis"), the broker for the London Insurers and, as well, the placement broker for the

City in procuring the insurance, of the claims pending against them in connection with the World Trade Center clean-up effort, and made demand that the insurers provide for their defense. The London Insurers claim that they did not receive these early notices. The insurers ultimately disclaimed liability and any obligation to provide a defense. In consequence, WTC Captive advanced defense expenses and, in February 2006, gave notice to the London Insurers and demanded that they provide a defense and reimburse WTC Captive for the expenses WTC Captive had advanced.

Liberty Mutual and WTC Captive claim that the Liberty Mutual policy was exhausted as of June 5, 2006, upon payment of various covered claims. Two days later, on June 7, 2006, Liberty Mutual provided notice to the London Insurers that the limits of its policy had been exhausted, and provided documentation of the exhaustion of the policy.[2]

In their papers, the London Insurers claim in their motion that the first notice they received of the claims against the City and its contractors was in August 2006, from the WTC Captive. In October 2006, the London Insurers informed the WTC Captive by letter that they would not assume the defense of the insured because they were not given timely notice and because, upon the London Insurers' preliminary review of the demand, they believed that the claims would not be covered by the insurance policies. The London Insurers followed their October 2006 letter with a second letter in January 2007, disclaiming coverage and any duty to defend the insureds.

---

[2] The London Insurers do not contest receipt of notice from Liberty Mutual, but claim that the proof of exhaustion provided by Liberty Mutual was insufficient. At argument, I instructed WTC Captive to arrange for Liberty Mutual to provide further documentation of exhaustion to the London Insurers. I instructed the London Insurers to notify the Court if they encountered further issues with Liberty Mutual's proofs. Having not heard anything further on the issue from the parties, I assume that the issue has been resolved.

At argument, in apparent contrast to the assertions made in their briefs that they did not receive notice of the claims against the City and its contractors until August 2006, the London Insurers stated that they first received notice of the claims in January 2005 from Turner Casualty & Surety on behalf of Turner Construction Company. Beginning in December 2004, Turner began providing notice to Liberty Mutual and Willis, asking for confirmation of acceptance of coverage and provision of a defense and indemnification. In November and December 2006, the London Insurers requested further information from Turner and met with them on at least one occasion regarding its request that the London Insurers assume its defense. In March 2007, the London Insurers sent a letter to Turner indicating that it would likely disclaim coverage on a number of grounds, including (1) the London Insurers' inability to confirm that Turner was a named insured; (2) application of the known occurrence and pollution exclusions; and (3) the fact that the London Insurers' policies applied in excess to the other available insurance. In July 2007, the London insurers formally disclaimed any obligation to defend or indemnify Turner via letter.

On February 16, 2007, WTC Captive filed this lawsuit against the London Insurers, seeking a declaration that the London Insurers had a duty to defend the City and its contractors in the 21 MC 100 litigation, and damages – essentially, reimbursement of defense expenses advanced by WTC Captive. The London Insurers moved to dismiss, contending that this court lacked subject matter jurisdiction. On December 14, 2007, at oral argument, I denied the motion and held that the district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Summary Order, December 14, 2007. I set out my reasons in a written opinion denying the London Insurers' motion for

7

reconsideration. <u>WTC Captive Ins. Co. v. Liberty Mut. Fire Ins. Co.,</u> -- F. Supp. 2d --,
No. 07 Civ. 1209 (AKH), 2008 WL 748405 (S.D.N.Y. Mar. 19, 2008).

WTC Captive then challenged the London Insurers' disclaimer of both
coverage and its duty to defend. On January 3, 2008, WTC Captive filed a motion for
partial summary judgment, seeking judgment from this Court declaring that the London
Insurers had breached their duty to defend, and asking this Court to grant judgment for
the defense costs advanced by WTC Captive. The London Insurers cross-moved for
summary judgment, seeking judgment dismissing the complaint and declaring that the
London Insurers had no duty to defend or indemnify the City or its contractors due to a
number of policy exclusions, most notably, the pollution exclusion.

I heard argument on March 19, 2008, and held for the plaintiff, WTC
Captive. <u>See</u> Summary Order, dated March 21, 2008. I held (1) that defendants had an
ongoing duty to defend the City and its contractors in the 21 MC 100 litigation; (2) that
defendants' obligation commenced upon exhaustion of the Liberty Mutual underlying
insurance policy and notice thereof; and (3) that the parties should settle the amount
defendants owed to plaintiff pursuant to these rulings.[3] This opinion explains my rulings
in greater detail.

---

[3] The London Insurers reserved rights to proceed against the Contractors' insurance following disclosure of
their policies.

## **Discussion**

I. <u>The London Insurers' Duty to Defend Is Triggered By the Claims in the 21 MC 100</u>

<u>Litigation.</u>

An insurer's duty to defend is "exceedingly broader" than the duty to

indemnify. <u>Maryland Cas. Co. v. Cont'l Cas. Co.</u>, 332 F.3d 145, 160 (2d Cir. 2003). The

duty to defend is triggered whenever the allegations within the "four corners" of the

complaint potentially give rise to a covered claim. <u>Frontier Insulation Contractors, Inc. v.</u>

<u>Merchants Mut. Ins. Co.</u>, 690 N.E.2d 866, 868 (N.Y. 1997). If any of the claims against

the insured arguably arise from covered events, the duty to defend is triggered. <u>Id.</u> If the

duty to defend is clear and unambiguous on the face of the policy, it will be enforced

according to its terms. <u>IBM v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 144 (2d Cir. 2004).

Should any ambiguity appear in the insurer's duty to defend, it will be resolved in favor

of the insured. <u>Id.</u> An insurer may be contractually bound to defend even if it is not

ultimately required to pay, either because the insured is not legally liable or because the

occurrence is outside the policy's coverage. Moreover, an insurer is required to defend

an insured even if the claims against the insured are frivolous or meritless. <u>Servidone</u>

<u>Constr. Corp. v. Sec. Ins. Co. of Hartford</u>, 64 N.Y.2d 419, 423-24 (N.Y. 1985).

The claims in the underlying 21 MC 100 litigation allege generally that the

City and its contractors failed to provide a safe workplace for the many individuals who

assisted in the rescue and clean-up effort in the months following the attacks of

September 11. The Complaints allege that the City and its contractors knew that the

conditions at the World Trade Center site were dangerous to the workers' health, but

failed to share this information with the workers, or to take steps to otherwise safeguard

9

the workers against illness. The plaintiffs cite specifically the alleged failure of the City

and its contractors to ensure that all workers (1) were provided undamaged, functioning

personal protective equipment, (2) were trained to utilize properly such equipment, and

(3) were monitored to ensure consistent usage of such equipment. The complaints allege

violations of New York State labor and general municipal laws, common law negligence,

and like causes of action.

      The London Insurers' policies, negotiated after the events of September

11, were issued to defend and indemnify the City and its contractors against claims of

bodily injury "arising out of the World Trade Center Emergency Clean-Up Project". The

policies were issued for a broad purpose, and the claims brought by the plaintiffs in the

21 MC 100 litigation fall squarely within that purpose. Had the London Insurers wanted

to avoid assuming costs of defense or indemnification for claims like those brought by

the plaintiffs in the 21 MC 100 litigation, they easily could have adopted suitable

language to exclude such cases: the London Insurers were in the unique position of

underwriting a risk retroactively, after the event causing the insured loss had already

occurred. I decline to release them from their obligation to defend and afford them a

benefit for which they did not contract.

      The Excess Insurers' duty to defend is explicitly stated in the text of the

policy:

    II.     Defense
          A.     We shall have the right and duty to defend any claim or suit
                 seeking damages covered by the terms and conditions of
                 this policy when:
              1.   The applicable limits of Insurance of the underlying
                    policies listed in the Schedule of Underlying Insurance
                    and the Limits of Insurance of any other underlying
                    Insurance providing coverage to the Insured have been

10

exhausted by payment of claims to which this policy applies; or

2. Damages are sought for Bodily Injury . . . covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured.

B.    When we assume the defense of any claim or suit:

1. We will defend any suit against the Insured seeking damages on account of Bodily Injury . . . even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

We will not defend any suit or claim after out applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any suit or claim are in addition to our Limits of Insurance.

I hold that this broad defense clause obligated the London Insurers to assume the defense of its insured from the time of exhaustion of the underlying Liberty Mutual policy through the present. As is clear from the law cited previously and the explicit terms of the policy, the duty to defend is broad, and the London Insurers duty has been triggered pursuant to the terms of the policy. As the London Insurers promised, "We will defend any suit against the Insured seeking damages on account of Bodily Injury . . . even if such suit is groundless, false or fraudulent . . . ."

II.  The Pollution Exclusion Clause Does Not Excuse the London Insurers' Duty To Defend.

The London Insurers contend that despite the admittedly broad duty to defend under New York law and under the terms of its policies, that duty is not triggered by the claims in the 21 MC 100 litigation because those claims fall within the pollution exclusion.

11

Policy exclusions must be strictly and narrowly construed, with any ambiguity being resolved in favor of the insured. Edwards v. Allstate Ins. Co., 792 N.Y.S.2d 504, 505 (N.Y. App. Div. 2005). The insurer has the burden of showing that the exclusion clearly and unmistakably applies to the claims. Fed. Ins. Co. v. 1030 Fifth Ave. Corp., 691 N.Y.S.2d 498, 499 (N.Y. App. Div. 1999). To be relieved of its duty to defend on the basis of a policy exclusion, the insurer bears a heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within the exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible legal or factual basis upon which the insurer may eventually be required to indemnify the insured. Frontier Insulation Contractors Inc., 690 N.E.2d at 868-69.

The pollution exclusion in the London Insurers' policies reads:

M. 1.       Bodily injury, Property Damage or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;
2.       Any loss, cost or expense arising out of any governmental direction or request that we, the Insured or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants, or
3.       Any loss, cost or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.
This exclusion M. shall not apply to Bodily Injury, Property Damage or Personal Injury arising out of:
1. Heat, smoke or fumes from a hostile fire;
2. The upset, overturn or collision of a motor vehicle; or
3. The Products-Completed Operations Hazard;
if insurance for such Bodily Injury, Property Damage or Personal Injury is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such Bodily Injury, Property Damage or Personal Injury will not be broader than the insurance coverage provided by the policy listed in the Schedule for Underlying insurance.

As used in this exclusion:

1. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapour, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

2. A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

The London Insurers argue that since the claims of the 21 MC 100 litigation involve exposure to toxic chemicals and other pollutants, they must fall within this policy exclusion. The argument is without merit. The City and its contractors are sued, not for causing pollution, but under the Labor Law, because the City allegedly failed to provide proper equipment, or training in the use of such equipment, and did not assure the safety of the workplace. Policy exclusions are to be interpreted narrowly. The London Insurers must show that all claims in the underlying 21 MC 100 litigation fall within the policy exclusion. Frontier Insulation Contractors Inc., 690 N.E.2d at 869 ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action.").

The London Insurers have not carried this burden. The claims asserted in the 21 MC 100 litigation allege that the City (1) knew that "the air and area in, around, on and at the World Trade Center site was polluted and contaminated with toxic hazardous substances", knew that "workers were exposed to enormous quantities of toxic, carcinogenic, mutagenic, teratogenic hazardous substances", and "knew that protection from hazardous substances was necessary for workers" but failed to share this information with the plaintiffs; (2) did not provide training or supervision of personal protective equipment and allowed damaged equipment to be used; and (3) deliberately concealed results of testing of the World Trade Center site which revealed "dangerously

13

high concentration of total volatile organic compounds, including but not limited to benzene, that far exceeded the protection limits provided by air purifying cartridge respirators and requiring, instead, supplied air and self-contained breathing apparatus (SCBA)." Amended Master Complaint Against the City of New York, 21 MC 100. The plaintiffs further allege that the contractors received information of workers becoming ill at the site but failed to act on this information and failed to ensure the proper safety training of its workers. Amended Master Complaint Against Construction Manager Defendants, 21 MC 100. It is clear, given the nature of these claims and the breadth of the duty to defend, that the London Insurers are unable to show that plaintiffs' claims fall wholly within the pollution exclusion. And because the London Insurers cannot show that all the claims fall within the pollution exclusion, the obligation to defend the City and its contractors is triggered with regard to the whole of the 21 MC 100 complaints. See Calvert Ins. Co. v. S&L Realty Corp., 926 F.Supp. 44 (S.D.N.Y. 1996) (Duty to defend landlord triggered against complaint alleging his negligence in failing to control and ventilate noxious fumes emanating from the installation of a new floor despite pollution exclusion clause); Schumann v. New York, 610 N.Y.S.2d 987, 989 (N.Y. Ct. Cl. 1994) (holding that pollution exclusion did not excuse insurer's duty to defend where plaintiff's claims included failure to provide appropriate protective device, because a reasonable possibility existed that the insured would be held liable for some act or omission within the policy).

The City and its contractors responded to a national tragedy. In the aftermath of September 11, thousands of workers came to the WTC site to assist in the rescue effort and to clear the area of the crushing amounts of debris from the collapsed

twin towers.  They sue the City, not because it failed to abate the pollution resulting from the collapse of the Twin Towers, but because, they allege, the City negligently failed to protect them from the harms present at the World Trade Center site.  The cases cited by the London Insurers are not persuasive.  None of those cases concern an insured's duty to safeguard the workplace.  They are classic cases of nuisance; they are claims of damage by adjacent property owners due to an insured's failure to abate or contain toxins.  See, e.g., Town of Harrison v. Nat'l Union Fire Ins. Co., 675 N.E.2d 829 (N.Y. 1996) (pollution exclusion applied where insured was sued by owners of adjacent properties alleging failure to abate disposal of toxic waste onto adjacent property during excavation effort); Denihan Ownership Co., LLC v. Commerce & Indus. Ins. Co., 37 A.D.3d 314 (N.Y. App. Div. 2007) (same; pollution exclusion applied where insurer had paid claim and extra contamination was later found on site).

      The London Insurers issued their policies in October 2001 and January 2002, after September 11, 2001.  Although all risks may not then have been evident, enough was known by the underwriters to enable them to write specific exclusions if, indeed, they truly intended to exclude specified risks and, particularly, the claims that were by then beginning to be filed in the lawsuits consolidated as the 21 MC 100 litigation.  The London Insurers failed to write such a specific exclusion.  They cannot now ask the court to remedy their failure.  The inability of the London Insurers to show that the "exclusion is subject to no other reasonable interpretation, and that there is no possible legal or factual basis upon which the insurer may eventually be required to indemnify the insured," Frontier Insulation Contractors, Inc., 690 N.E.2d at 868-69, requires them to defend their insureds.

At argument, the London Insurers attempted to identify certain classes of claims in the 21 MC 100 litigation that would fall within the policy. Their effort is beside the point. This case is not about the ultimate duty to pay; it is about the duty to defend. The duty to defend is broad, and if the duty is triggered by any of the claims, as it clearly is here, the London Insurers must defend against all of the claims. See Ogden Corp. v. Travelers Indem. Co., 924 F.2d 39, 41 (2d Cir. 1991) (to be relieved of duty to defend, insurer must show that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation") (quoting Technicon Elecs. Corp. v. Am. Home Assurance Co., 542 N.E.2d 1048, 1050 (N.Y. 1989)).[4]

III. The London Insurers' Defense of Inadequate Notice Fails.

The London Insurers argue that summary judgment is inappropriate at this stage because material issues of fact are present in this case—most notably, the issue of whether the London Insurers were provided with timely notice of the claims filed in the underlying 21 MC 100 litigation and of their alleged duty to defend and indemnify those claims. I hold that notice was adequate, and that no triable issues of fact are presented. The London Insurers argued in their papers that they did not receive notice of the 21 MC 100 litigation from the WTC Captive until August 2006. At argument, however, the London Insurers acknowledged that they received notice of the litigation a year-and-a-half earlier, in January 2005, from Turner Casualty & Surety on behalf of Turner

---

[4] In its moving brief, the WTC Captive argued that neither (1) the "known occurrence" exclusion— excluding from coverage an occurrence of which the insured was aware or should have been aware prior to October 3, 2001—nor (2) the asbestos exclusion contained in the London Insurers' Policies, operated to excuse the London Insurers' duty to defend. The London Insurers did not address these arguments in their brief, and therefore have conceded that these exclusions do not excuse their duty to defend in the 21 MC 100 litigation. And even if the London Insurers had argued that these exclusions applied, I note that, upon my independent review of these exclusions, they do not apply to the claims in the 21 MC 100 litigation.

Construction Company.  The City gave its first notice to the London Insurers in October

2002.  Pursuant to Endorsement No. 13 of the policy and custom and usage, it sent its

notice to Willis, the broker for the London Insurers and, as well, the placement broker for

the City in procuring the insurance.  Notice to the broker constitutes notice to the insurer

for which it acts.  1 Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance

Coverage Disputes § 4.02(d) (Aspen Publishers 13th ed. 2006) ("The insured can, of

course, satisfy the notice requirement by providing notice to an authorized agent of the

insurer.").[5]

The London Insurers, inexplicably, claim not to have received the notice.

Equally inexplicably, the London Insurers could not tell me with any reliability that

Willis had or had not transmitted the notices to the London Insurers. The London Insurers

also argue that the City's notice to Willis was insufficient, because Endorsement No. 24

to the policy provided that notice should be given both to Willis, the broker, and to the

attorneys of the London Insurers, Wilson, Elser, Moskowitz, Edelman & Dicker..

I am not persuaded by the Excess Insurers' arguments.  I rule that the

notice provided by the insureds to Willis of the claims in the 21 MC 100 litigation, with

instruction to forward the claims onto the insurers, was adequate notice.[6]  Clearly and

admittedly, the London Insurers were already on notice, for they admit that they had

received the notice given by Turner in January 2005, a point in time before 97 percent of

the claims now pending in the 21 MC 100 litigation had been filed.  Given the extensive

---

[5] The City's notice read, "Please promptly transmit this entire set of Notices to all insurers participating in
the World Trade Center Coordinated Insurance Program, and advise me of the date it is transmitted".
[6] If, as the London Insurers hypothesized at argument, Willis failed to transmit the notices from the insured
of the claims because Willis believed that the London Insurers' policies were not triggered, the London
Insurers may have a cause of action against Willis, but Willis' possible failure to transmit the notice has no
bearing on my ruling on the adequacy of the notice.

press coverage of everything related to 9/11, it is incredible for the London Insurers to argue that they were unaware of their duty to defend until WTC Captive's notice, in August 2006. Indeed, that was the time when the London Insurers' duty to defend was triggered, for the underlying Liberty Mutual policy became exhausted just two months earlier, on June 5, 2006, with notice being provided to the London Insurers two days later, on June 7, 2006. By then, the London Insurers were well aware of the litigation and of their obligation to defend the City and its contractors. I hold that the London Insurers cannot evade their obligation by complaining about notice.

IV. The London Insurers' Right To Sue Other Insurance Companies for Indemnification at a Later Date Is Preserved.

The London Insurers raise a concern that although they are primary to the excess policy of WTC Captive, the WTC Captive is primary to the contractors' insurance.[7] In consequence, the London Insurers argue, they may have recourse for defense costs they advance against the contractors' insurance. The relevant provision of the WTC Captive insurance policy provides as follows: "the Company [WTC Captive] will only be liable in excess of Underlying Insurance Amounts under valid Underlying Policies." The Underlying Policies are set forth in Schedule 2 of the WTC Policy and include the Liberty Mutual and London Insurers' policies, as well as other policies.

The insurance coverage held by the contractors and subcontractors that were engaged in the clean-up effort is in the process of being produced in the 21 MC 100 litigation, and provisions of confidentiality have not yet been settled. Consequently, I do not have sufficient information to rule on the concern raised by the London Insurers, even

---

[7] WTC Captive represented that the City has no insurance other than the Liberty Mutual, London Insurers and WTC Captive policies.

had I wanted to do so. The issue is not fairly raised by the complaint or summary judgment motion of WTC Captive, and I decline to respond to the concern expressed by the London Insurers. Whether they have recourse against other insurance carriers is an issue for the future. The concern has no relevance to this case, and it does not affect my ruling that the London Insurers have a duty to defend the City and its contractors in the underlying litigation, from the date of notice to the London Insurers that the underlying Liberty Mutual policy was exhausted, and thereafter until their policies are exhausted.

### Conclusion

For the reasons stated, I grant WTC Captive's motion for partial summary judgment and deny the London Insurers' cross-motion for summary judgment. The parties will meet with me at conference on May 23, 2008, 9:30 a.m., or represent in a joint letter to me before then: (1) whether they have reduced the amount owed by the London Insurers to WTC Captive to a fixed sum, and the amount of that sum; (2) if not, what further proceedings should be had; (3) whether WTC Captive wishes to proceed with, or withdraw, the second count of its complaint, alleging breach of fiduciary duty; and (4) such other matters as either party wishes to raise.

SO ORDERED.

Dated:       April 15, 2008
New York, New York


ALVIN K. HELLERSTEIN
United States District Judge`

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

WTC CAPTIVE INSURANCE COMPANY, INC.,   :

                                Plaintiff,   :

      -against-   :

LIBERTY MUTUAL FIRE INSURANCE COMPANY;   :
CERTAIN UNDERWRITERS AT LLOYD'S, AND   :
CERTAIN LONDON MARKET INSURANCE   :
COMPANIES; ASSICURAZIONI GENERALI S.P.A.; and   :
GENERAL SECURITY INDEMNITY COMPANY OF   :
ARIZONA, as attorney in fact for and successor in interest to   :
GENERAL SECURITY INDEMNITY COMPANY (now   :
known as HUDSON SPECIALTY INSURANCE   :
COMPANY),   :

                           Defendants.   :

   :

------------------------------------------------------------------------ x

**SUMMARY ORDER
GRANTING
PLAINTIFF'S MOTION
FOR PARTIAL
SUMMARY JUDGMENT
AND DENYING
DEFENDANTS' CROSS
MOTION FOR
SUMMARY JUDGMENT**

07 Civ. 1209 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

      The parties appeared before me on March 19, 2008, for argument on cross-

motions for partial summary judgment. For the reasons stated on the record, I make the

following rulings.

      (1) Defendants Certain Underwriters at Lloyd's, London, Certain London Market

Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company

of Arizona (collectively the "Excess Insurers") have an on-going duty to defend the City of New

York and its contractors in the personal injury cases arising out of the World Trade Center clean-

up effort, consolidated under the 21 MC 100 docket number. I therefore grant the WTC

Captive's motion for partial summary judgment seeking a declaration of the Excess Insurers'

duty to defend;

      (2)  The Excess Insurers' obligation to defend extends from the date that the

underlying insurance policy issued by Liberty Mutual Fire Insurance Company was exhausted

based on the obligation of Liberty Mutual to pay in the aggregate the amounts of its policy through the present, and notice thereof;

(3)  Counsel for WTC Captive and for the Excess Insurers shall settle the amount pursuant to these rulings;

(4)  The Excess Insurers are hereby granted leave to seek recovery from any other insurance carrier, or any other appropriate relief, if discovery in the 21 MC 100 cases so indicates.

A full opinion explicating the reasons for the aforementioned rulings will follow.

SO ORDERED.

Dated:          March ___, 2008
                New York, New York


                                                ALVIN K. HELLERSTEIN
                                                United States District Judge

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- x
WTC CAPTIVE INSURANCE COMPANY, INC.,     :

                         Plaintiff,       :

   -against-                        :

LIBERTY MUTUAL FIRE INSURANCE COMPANY;  :
CERTAIN UNDERWRITERS AT LLOYD'S, AND    :
CERTAIN LONDON MARKET INSURANCE       :
COMPANIES; ASSICURAZIONI GENERALI S.P.A.;  :
and GENERAL SECURITY INDEMNITY COMPANY :
OF ARIZONA, as attorney in fact and successor in  :
interest to GENERAL SECURITY INDEMNITY   :
COMPANY (now known as HUDSON SPECIALTY  :
INSURANCE COMPANY),               :

                    Defendants.    :

                               :
--------------------------------------------------------- x

|  |  |
|---|---|
| | **ORDER DENYING** |
| | **DEFENDANTS'** |
| | **MOTION TO** |
| | **RECONSIDER** |
| | **SUBJECT MATTER** |
| | **JURISDICTION** |
| | |
| | 07 Civ. 1209 (AKH) |

ALVIN K. HELLERSTEIN, U.S.D.J.:

       This case involves a clash among insurance carriers.

       In the aftermath of the terrorist-related aircraft crashes into the World

Trade Center on September 11, 2001, the City of New York procured insurance to protect

itself and its contractors from loss, liability and expense arising from the removal of

debris from the collapsed Twin Towers.  Approximately 10,000 lawsuits have been filed

against the City and its contractors relating to such work, all consolidated before me

pursuant to this court's exclusive jurisdiction.  <u>See</u> Air Transportation Safety and System

Stabilization Act, 49 U.S.C. § 40101, ("ATSSSA"), Section 408(b)(3).  Under the Act,

the City cannot be liable, in the aggregate, for more than its insurance coverage (more

precisely, the greater of $350 million or its insurance coverage).  <u>Id.</u>, section 408(a)(3).

The lawsuit brought by the insurance carriers will fix that coverage, and requires me to

rule who among them, and in what sequence, should bear the costs of defending the

10,000 lawsuits, and pay for the liabilities or losses that might be incurred. At the threshold, I am required to rule if this court has subject matter jurisdiction over the insurance companies' lawsuit.

I ruled in favor of this court's jurisdiction twice before, once in related litigation brought by and against the insurance carriers protecting the owners and lessees of the Twin Towers from loss, liability and expense, see In re Sept. 11 Liab. Ins. Coverage Cases, 333 F.Supp.2d 111, 115-19 (S.D.N.Y. 2004), and again in the present case, by Order dated December 14, 2007. I write now, in response to the insurance carriers' motion for reconsideration, to provide a fuller explanation of this court's subject matter jurisdiction.

## The City's Insurance Program

In the wake of the September 11 attacks on the World Trade Center, and in connection with the massive job that lay ahead to clear the debris of the attacks, the City sought and obtained insurance protection. Protection in the amount of $77 million was obtained, arranged in several layers.

Liberty Mutual Fire Insurance Company ("Liberty Mutual"), a Massachusetts company with its principal place of business in Boston, retroactively engaged to be the primary carrier.[1] While the complaint alleges that the policy was obtained shortly after September 11, 2001, the precise date is unknown. The policy provided $4 million aggregate coverage to the City and its contractors and consultants for bodily injury occurring in connection with the World Trade Center clean-up effort, and covered the period from September 11, 2001 to December 31, 2002. The policy imposed

---

[1] WTC Captive and Liberty Fire have reached a private agreement after the onset of this litigation. See Order Dismissing Defendant Liberty Mutual Fire Insurance Company, dated January 4, 2008.

a duty on Liberty Mutual to defend the insureds up to the indemnity limits of the policy. The policy was subject to a number of exclusions, including an exclusion for "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'".

The City contracted also for excess coverage in the London market, arranging the next $75 million layer of coverage with various syndicates at Lloyd's, joined by Assicurazioni Generali S.p.A., and General Security Indemnity Company of Arizona (collectively the "London," or the "Excess" "Insurers"). Two policies were obtained, the first, contracted for on October 5, 2001, for $50 million of coverage, and the second, contracted for on January 9, 2002, for $25 million of coverage. Like the primary coverage provided by Liberty, the excess coverage provided by the London Insurers covered the City and its contractors for their exposure to liability and loss arising from the clean-up efforts at the World Trade Center covering the period from September 11, 2001 to December 31, 2002. The policies also covered the City against the expense of defending the claims and lawsuits brought against it, with the costs of such defense to be additional to, and not subtracted from, the City's liability and loss. The London Insurers' policy also contained various exclusions, including a pollution exclusion barring coverage for bodily injury "arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world". The London Insurers' liability arises upon the exhaustion of the Liberty Mutual policy, and in excess of the insured's retained limit, which the London Insurers allege to be between $250,000 and $2 million per occurrence. The London Insurers' duty to defend ends when the policy limits have been exhausted.

3

Approximately two years later, on December 3, 2004, the City obtained additional protection for itself and its contractors from the Federal Emergency Management Agency ("FEMA"). Funded by a grant from FEMA, a not-for-profit, captive insurance company was formed—WTC Captive Insurance Company ("WTC Captive")—to protect the City and its contractors against loss, liability and expense that exceeded the City's existing insurance protection. The WTC Captive received roughly $1 billion in funds from FEMA and insured the City and its contractors and consultants against claims arising in connection with the World Trade Center clean-up effort. In contrast with the other policies, the WTC Captive policy does not appear to contain a pollution exclusion. Like the other policies, the WTC Captive policy obligated the WTC Captive to undertake the defense of the insured, but the WTC Captive's duty to defend was not triggered until the underlying insurers' duties to defend had been exhausted, and was to last until its own policy limits were exhausted. The Liberty Mutual policy and both London Insurers' policies are listed as underlying policies in the WTC Captive policy.

## The Prior Proceedings

Beginning in 2002, and continuing to the present, the City and its contractors were sued by those who worked at the World Trade Center site, to recover damages for the personal injuries they allegedly incurred – mostly, injuries to their respiratory tracts and various cancers. The City and the Contractors made demand upon its insurance carriers to defend it in such suits, but only WTC Captive responded affirmatively, beginning in the Fall of 2004. There are now approximately 10,000 of these suits. They are all pending in this court and are assigned to me. They are

consolidated for coordinated pre-trial discovery.  See <u>The World Trade Center Disaster Site Litigation</u>, 21 MC 100.

Beginning in October 2002, the City and its contractors provided notice to the London Insurers of the claims pending against them in connection with the World Trade Center clean-up effort.  In February 2006, the WTC Captive began providing notice to the London Insurers of their duty to defend the City and its contractors, and seeking reimbursement for the expenses WTC Captive had thus far incurred.[2]

The London Insurers claim that the first notice they received of the claims against the City and its contractors was in August 2006, from the WTC Captive.  In October 2006, the London Insurers informed the WTC Captive by letter that they would not assume the defense of the insured because they were not given timely notice and because, upon the London Insurers' preliminary review of the demand, they believed that the claims would not be covered by the insurance policies.  The London Insurers followed their October 2006 letter with a second letter in January 2007, disclaiming coverage and any duty to defend the insureds.

On February 16, 2007, WTC Captive filed this lawsuit against the London Insurers, seeking a declaration that the London Insurers had a duty to defend the City and its contractors in the 21 MC 100 litigation, and damages.  The London Insurers moved to dismiss, contending that this court lacked subject matter jurisdiction.  On December 14, 2007, I denied the motion, and held that the district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  I ruled that because, under the ATSSSA, the City could not be liable beyond its insurance limits, I would not be able to determine, or help the

---

[2] The precise details of the notice afforded to the London Insurers will be set forth in greater detail in the forthcoming opinion on the parties' cross-motions for summary judgment.

parties resolve, the lawsuits against the City without first determining the scope and extent of the City's insurance coverage. Since, under McNally v. Port Authority (In re World Trade Center Disaster Site), 414 F.3d 352 (2d Cir. 2005), all these workers' suits arose from, or were related to, the terrorist-related aircraft crashes into the World Trade Center, regardless if the injuries complained of arose immediately after September 11, or at any time thereafter until the clean-up work was completed approximately eight months later, in May 2002, the City's insurance coverage also had to be determined by the same court that had exclusive jurisdiction of the underlying lawsuits.

On January 3, 2008, the London Insurers moved for reconsideration, arguing that I had overlooked Peacock v. Thomas, 516 U.S. 349 (1996), a case that they previously failed to cite, and generally re-arguing their motion. I denied the motion, and denied also defendants' motion to certify the decision for interlocutory appeal. I write to present my reasoning more fully.

## Discussion

### 1.T he Bases for Reconsideration Have Not Been Satisfied

A motion for reconsideration may be granted to (1) correct clear error; (2) prevent manifest injustice; or (3) consider newly-available evidence. USA Certified Merch. LLC v. Koebel, 273 F. Supp. 2d 501, 503 (S.D.N.Y. 2003). The criteria are "strict;" reconsideration generally is denied unless the moving party can point to "controlling decisions or data that the court overlooked," and such matters must be of such importance as reasonably to expect that they "alter the conclusion reached by the court". Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A court's reconsideration of a previous order "is an extraordinary remedy to be employed sparingly

6

in the interests of finality and conservation of scarce judicial resources". In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (internal quotation marks and citation omitted). Displeasure with a result is not a basis for the motion; the motion is not intended to provide an opportunity to reargue issues that have already been decided. In re Houbigant, Inc., 914 F. Supp. 997, 1001 (S.D.N.Y. 1996).

The insurance carriers have no basis to ask for reconsideration. Their arguments are a rehash of the arguments they previously made, with one exception, their reference to Peacock v. Thomas, 516 U.S. 349 (1996). The case, however, is not controlling, and is readily distinguishable. Indeed, the London Insurers failed previously to cite it, an indication that they, as well, gave it little regard. They now claim that Peacock is important, but a motion for reconsideration is not the time to bring a supposedly important precedent to the court's attention. Motions for reconsideration are not intended to save the parties from the consequences of their own research neglects. See Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp., 948 F.2d 111, 115 (2d Cir. 1991) (party may not raise arguments for the first time on a motion for reconsideration).

For all these reasons, I normally would deny such a motion for reconsideration without discussing the merits. However, because the issue is jurisdiction, always a basic proposition in federal jurisprudence, and because of the intense public interest in all aspects of the 9/11 litigation, a written review of the jurisdictional merits is a useful discipline.

For the reasons that follow, I hold that this court has supplemental jurisdiction, pursuant to the ATSSSA, over the issues of this case, declaring the rights

and liabilities of the City and its contractors vis-à-vis the City's insurance carriers, and between those carriers and the WTC Captive established pursuant to the one billion dollar grant of FEMA.

### 2. The Air Transportation Safety and System Stabilization Act

On September 22, 2001, less than two weeks after the 9/11 attacks, Congress passed the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101. Section 408(b)(3) of the Act gave the United States District Court for the Southern District of New York "original and exclusive jurisdiction over all actions brought for any claim (including any claim for loss of property, personal injury, or death) resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001". Congress enacted section 408(b)(3) so that uniformity and expertise could be concentrated in a single court dealing with all 9/11-related litigation, and to avoid the possibility of inconsistent judgments. McNally, 414 F.3d at 377; In re Sept. 11 Liab. Ins. Coverage Cases, 333 F.Supp.2d at 117. The Second Circuit, in McNally, ruled that because of this section, and the Congressional intent that it reflects, all workers' claims, throughout the period of work on the World Trade Center site, from September 11, 2001 to May 2002, could be heard only in the Southern District of New York, and in no other court.

In passing the ATSSSA, Congress sought to protect America's aviation industry against its exposure to what was thought might be ruinous liability and years of litigation in State and federal courts throughout the United States. Thus, pursuant to the Act, the airlines' liability, and the liability of related aviation defendants, was limited to

8

their insurance coverages, and all cases against such aviation defendants relating to 9/11

had to be heard in the United States District Court for the Southern District of New York.

Soon after the original passage of the ATSSSA, section 408(a)(3) was

added, providing the City and the Port Authority with similar protection to that of the

airlines, via a ceiling beyond which the City could not be liable.  Section 408(a)(3)

provides,

> Liability for all claims, whether for compensatory or
> punitive damages or for contribution or indemnity arising
> from the terrorist-related aircraft crashes of September 11,
> 2001, against the City of New York shall not exceed the
> greater of the city's insurance coverage or $350,000,000.

In McNally, the court of appeals ruled that this ceiling applied to all the

lawsuits filed and to be filed against the City for personal injuries incurred by workers in

the clean-up efforts of the World Trade Center debris, beginning immediately upon the

terrorist-relate aircraft crashes into the Twin Towers of the World Trade Center, and

extending until the clean-up efforts were concluded eight months later, in May 2002.  414

F.3d at 358.

### 3. The Issues of Federal Jurisdiction

A dispute among insurers arises from their several contracts of insurance,

and the resolution of such disputes requires that the language of the contracts be applied

or interpreted.  However, in this case, the WTC Captive argues that the cases relate to,

and arise from, the events of 9/11, and are therefore embraced by the ATSSSA.  The

Captive's argument depends on the unique jurisdiction-conferring section of the

governing statute, providing that cases "arising from" or "related to" the events of 9/11

are federal claims, and that all such claims are subject to the exclusive jurisdiction of the

9

United States District Court for the Southern District of New York. See ATSSSA, section 408(b)(3).

I do not accept this argument. The disputes bounded by an insurance contract arise under State law, not federal law, and in normal situations, the policy considerations governing the interpretation and regulation of such contracts are State, not federal, considerations. Thus, on several occasions, the Court of Appeals rejected jurisdiction over claims against insurers because of losses arising from the events of 9/11. See, e.g., Canada Life Assurance Co. v. Converium Ruckversicherung (Deutschland) AG, 335 F.3d 52 (2d Cir. 2003) (reinsurer's claim against a retrocessionaire alleging breach of indemnification contracts which spread the risk of loss under upstream primary insurance policies fell outside the ATSSSA's jurisdictional provisions because the actual events of 9/11 were irrelevant to the dispute, and simple "but for" causation was not enough to bring the dispute within the ATSSSA's reach); Combined Ins. Co. of Am. v. Certain Underwriters at Lloyd's London, 75 Fed. Appx. 799 (2d Cir. 2003) (breach of contract claim by insurer providing coverage for losses due to the events of 9/11 under the employer's accidental death and dismemberment policy did not fall within ATSSSA jurisdiction because resolution of the claim did not require the court to reference or examine the events of 9/11). However, these cases did not involve the World Trade Center, or limitations on rights and recoveries provided by the ATSSSA. Thus, the cases cited above are distinguishable.

4. The Issues of Federal Supplemental Jurisdiction

Supplemental jurisdiction is defined by 28 U.S.C. § 1367. Pursuant to § 1367(a), a district court may exercise supplemental jurisdiction over any claim that is

so related to claims over which the district court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution". Thus, the issue is the degree of relatedness between the instant dispute and the lawsuits of the workers against the City and its contractors.

The standard set forth in 28 U.S.C. § 1367 has been "construed generously", Smylis v. City of New York, 983 F. Supp. 478, 484 (S.D.N.Y. 1997), and federal courts have found that a "loose factual connection is generally sufficient". Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995). The Supreme Court has directed district courts to consider the values of judicial economy, convenience, fairness and comity in deciding whether to exercise supplemental jurisdiction. See City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 172-73 (1997).

Federal courts typically hold that they have supplemental jurisdiction over third-party actions brought by insureds against their insurers to declare rights and obligations of insurance contracts. See, e.g., Garfield Slope Housing Corp. v. Pub. Serv. Mut. Ins. Co., 973 F.Supp. 326, 330 (E.D.N.Y. 1997); Bruce v. City of Middletown, 781 F.Supp.1013, 1016 (S.D.N.Y. 1997). If the underlying case by or against the insured satisfies federal jurisdiction, there does not have to be an independent basis of jurisdiction over the third-party action between the insured and the insurer, because supplemental jurisdiction lies. Id. At oral argument, the London Insurers conceded that a case against it brought by the City or its contractors in the underlying litigation would be embraced by this court's supplemental jurisdiction pursuant to section 1367. But, the London Insurers

11

argue, since WTC Captive is not a party to the underlying suits, there should be no independent basis of jurisdiction against the London Insurers.[3]

The arguments of the London Insurers are simplistic, and without merit. WTC Captive, although not technically a party, is bound up in all the 10,000 lawsuits against the City comprising the underlying federal actions. The insurance it provides to the City will define the ceiling of liability to which the City is exposed, and against which the plaintiffs may make claim and seek recoveries. The costs of defense it has advanced, and may continue to advance, to defend the City and its contractors diminish the insurance available to pay claims, and the claims of WTC Captive against the London Insurers to define who has the obligation to pay defense costs, and in what sequence, will directly and vitally affect the aggregate recoveries obtainable by the plaintiffs. Indeed, there is serious question if any money can be paid out in settlements, if and when the parties agree to settlements, without a definition of the aggregate amounts that may be available to fund all settlements.

There are further reasons why the arguments of the London Insurers are without merit. Had the City and its contractors filed third-party actions against all its insurers, including WTC Captive, the insurers, in defense, could have filed fourth-party actions against one another to sort out the sequence of insurers' obligations to provide a defense. Clearly, this court has jurisdiction over such a suit of impleader, see Rule 14, Fed. R. Civ. P., see Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 512 F.3d 800, 806 (6th Cir. 2008); Reinhart Oil & Gas, Inc. v. Excel Directional Techs., Inc., 463 F. Supp.

---

[3] The Lloyd's insurance syndicates do not have a jural personality. Thus diversity requires a finding that none of the insuring syndicates' members are citizens of New York, the state of incorporation and principal place of business of WTC Captive. Since I am not able to make that finding, the dispute cannot be heard in this Court as a diversity case.

2d 1240, 1262 (D. Colo. 2006), and the London Insurers so conceded in arguing their motion, see 2/5/08 Tr., at 6-7. Federal jurisdiction is no less if, instead of a third-party lawsuit serving as predicate, WTC Captive advanced the funds and then brought its declaratory judgment action against the insurers having the primary duty to provide a defense in a separate action, particularly in light of the exigencies and dangers to health and safety incident to the smoking and festering piles of debris following 9/11. Technically, WTC Captive, by advancing funds owed primarily by other insurers, became subrogated to the rights of the City and its contractors against those other insurers, thus gaining the right to file third-party actions against Liberty Mutual and Lloyds. See Fed. Ins. Co. v. Arthur Andersen & Co., 75 N.Y.2d 366, 372 (N.Y. 1990), 16 Couch on Ins. § 222:5 (3d ed. 2007).

Neither the City nor WTC Captive should be required to file separate third-party actions in each of the 10,000 lawsuits against the City. That would be a useless as well as extremely burdensome and expensive rule to follow, for the parties and for the Court. WTC Captive's declaratory judgment lawsuit against Lloyds serves precisely the same function in one action as 10,000 such third- and fourth-party actions. The concept of supplemental jurisdiction is practical, and technical niceties should not defeat practical needs. We can never forget the City's urgent need to restore normal existence, eliminate the hazard of the debris pile to the health and safety of the New York City populace, mind the safety of its firefighters, police and construction workers, and preserve the fiscal soundness and financial integrity of the City. As the Court of Appeals ruled in McNally, federal jurisdiction conferred by Congress should be liberally and unstintingly applied, both directly and through supplemental jurisdiction.

13

I held, in September 11 Liability Insurance Coverage Cases, 333 F. Supp. 2d 111 (S.D.N.Y. 2004), a case concerning the allocation and sequence of insurance coverage among the insurance carriers covering the owner and lessees of the Twin Towers of the World Trade Center, that the unique statutory framework of the ATSSSA made "the scope and extent of the defendants' liability coverage, whom the policies cover, . . . crucial to the dispositions of the Underlying Cases".[4]  333 F. Supp. 2d at 117. I also noted the risk of inconsistent or inefficient judgments if the insurance dispute was litigated in various State courts while the underlying litigation remained before me, and observed that such a result would defeat "Congress' desire for uniformity and expertise in dealing with these cases". Id. at 117.

The instant dispute presents me with nearly identical legal issues. Whether the issues are raised by third and fourth party pleadings in each of the 10,000 cases, or by a single declaratory judgment relating to those cases, is not important. Supplemental jurisdiction is fundamentally needed to promote judicial economy and efficiency, and to avoid delays and inconsistencies of proceedings in the state courts. There is no principled reason to distinguish this case from the prior insurance dispute.

### 5. Peacock v. Thomas Is Distinguishable and Not Relevant

In Peacock v. Thomas, 516 U.S. 349 (1996), the case on which the London Insurer's motion for reconsideration is based, federal jurisdiction for the underlying action was premised on the special and limited provisions of ERISA, 29 U.S.C. § 1132 (a).  The plaintiff, in that lawsuit, sued his former employer, Tru-Tech, Inc., and its principal officer and shareholder, D. Grant Peacock.  The district court had

---

[4] As discussed supra, the ATSSSA contains a similar liability cap as the cap applicable to the City for "persons with a property interest in the World Trade Center". ATSSSA, §408(a)(1).

14

jurisdiction over, and entered judgment against, Tru-Tech, but had no jurisdiction over Peacock, since he was not a fiduciary. See 516 U.S. at 351. However, when Thomas was not able to enforce his judgment against Tru-Tech, Thomas again sued Peacock, claiming that Peacock preferred to pay other creditors of Tru-Tech. The Supreme Court, reversing the Court of Appeals and the District Court, held that Thomas' State claim for fraudulent conveyances and preferences against Peacock could not be used to enlarge ERISA jurisdiction, neither directly nor by any theory of supplemental jurisdiction.

The Supreme Court, quoting Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375, 379-80 (1994), ruled that ancillary jurisdiction was appropriate "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees," id. at 354, and that neither consideration applied to Thomas' case. The first—the ERISA lawsuit—had already been resolved, and neither the convenience of the parties nor considerations of judicial economy supported the exercise of ancillary jurisdiction in the second lawsuit. Furthermore, the first ERISA lawsuit, and the second fraudulent conveyance lawsuit, were neither factually nor legally interdependent, and there was no sufficient interest of judicial efficiency or economy that could justify the exercise of ancillary jurisdiction. The Supreme Court noted also that Thomas's second lawsuit attempted to impose an obligation for an existing federal judgment on an individual who was not originally liable for the judgment. Id. at 356-57.

Peacock has no bearing on whether I should exercise supplemental jurisdiction over WTC Captive's lawsuit against the London Insurers. Unlike Peacock,

the 10,000 lawsuits over which I preside are currently pending, and they are heavily

dependent on my being able to regulate the dispute among the relevant insurers.  The

insurance issues and the liability issues are closely intertwined, and judicial efficiency

and practical resolutions clearly will be served by my exercising supplemental

jurisdiction.  And, unlike Peacock, federal jurisdiction over the events of 9/11 are

expansive, McNally, 414 F.3d at 480, not limited under a finely "articulated"

jurisdictional statute.  See 29 § 1132(a); 516 U.S. at 353.  Moreover, Peacock is

concerned with whether federal jurisdiction may be extended to enforce judgments, an

issue that is not before me. Cf. Epperson v. Entm't Express, Inc., 242 F.3d 100, 104 (2d

Cir. 2001) (examining whether a fraudulent transfer cause of action falls within a federal

court's enforcement power, and analyzing Peacock as a case concerning the

"enforcement branch" of ancillary jurisdiction); UFCW Local 174 Commercial Health

Care Fund v. Homestead Meadows Foods Corp., 425 F. Supp. 2d 392, 394 (S.D.N.Y.

2005) (examining Peacock's impact on ancillary jurisdiction over actions to enforce

judgments).

   There is good reason why the London Insurers did not bother to cite

Peacock v. Thomas in their original submissions: the case is not relevant.  The rule of law

announced in Peacock v. Thomas does not provide a basis upon which to ask for

reconsideration, and it does not provide a reason to suggest a different jurisdictional

outcome.

6. <u>The Decision Is Not Appropriate for Certification</u>

I deny also the London Insurers alternative motion, that I certify my decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such an order.

There already have been two interlocutory appeals in the cases against the City, slowing progress by several years. According to newspaper reports, various of the plaintiffs have died or experienced grave consequences to their health while these cases are pending, and claim substantial prejudice from delays. More than six years have passed since September 11, 2001, and much judicial effort has been expended in moving these cases toward resolution or trial. Another delay would cause severe prejudice to many of the litigants.

There has been no showing of any substantial division among courts or commentators regarding the issue of the court's ancillary jurisdiction. An immediate appeal is likely to delay, and not to materially advance, the ultimate termination of the litigation. And if the court is wrong in this and later decisions, the parties on all sides have sufficient financial substance readily to provide redress.

## Conclusion

For the reasons stated in this decision, I deny the London Insurers'

motions for reconsideration and to certify my decision for interlocutory appeal. I hold

that I have supplemental jurisdiction over this case.

SO ORDERED.

Dated:        March 19, 2008
                   New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

WTC CAPTIVE INSURANCE COMPANY, INC.,                          :

       Plaintiff,                    :

  -against-                                               :

LIBERTY MUTUAL FIRE INSURANCE COMPANY;      :
CERTAIN UNDERWRITERS AT LLOYD'S, AND            :
CERTAIN LONDON MARKET INSURANCE                   :
COMPANIES; ASSICURAZIONI GENERALI S.P.A.; and   :
GENERAL SECURITY INDEMNITY COMPANY OF        :
ARIZONA, as attorney in fact for and successor in interest to  :
GENERAL SECURITY INDEMNITY COMPANY (now   :
known as HUDSON SPECIALTY INSURANCE              :
COMPANY),                                                            :

       Defendants.                    :

                       :

----------------------------------------------------------------- x

**ORDER**

07 Civ. 1209 (AKH)

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:
DATE FILED: 12/14/07
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

    Defendants Certain Underwriters at Lloyd's, London, Certain London Market

Insurance Companies, Assicurazioni Generali S.p.A., and General Security Indemnity Company

of Arizona (collectively the "Excess Insurers") move to dismiss the Complaint for a lack of

subject matter jurisdiction.  Plaintiff WTC Captive Insurance Co., Inc. and Plaintiffs-Intervenors

(plaintiffs who have claims pending in 21 MC 100, 21 MC 102 or 21 MC 103) oppose the

Excess Insurers' motion.

    Because I find, upon a review of the Complaint, that I have supplemental

jurisdiction over this dispute pursuant to 28 U.S.C. § 1367(a), the motion to dismiss the

complaint on subject matter jurisdiction grounds is DENIED.  The outcome of this insurance

dispute will directly impact the scope and extent of available funds in the September 11

litigations.  I hold that the reasons I articulated for exercising supplemental jurisdiction in a

previous insurance coverage dispute involving the Port Authority, In re September 11 Liability

1

Insurance Coverage Cases, 333 F.Supp.2d 111, 115-19 (S.D.N.Y. 2004), are fully applicable

here.  Therefore, the Excess Insurers' motion to dismiss is DENIED.

SO ORDERED.

Dated:          December 14, 2007
                New York, New York

ALVIN K. HELLERSTEIN
United States District Judge



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
WTC CAPTIVE INSURANCE COMPANY, INC.,  :
                                       :
                            Plaintiff, :
                                       :
                 v.                    :
                                       :
LIBERTY MUTUAL FIRE INSURANCE          :
COMPANY; CERTAIN UNDERWRITERS AT       :
LLOYD'S, LONDON, AND CERTAIN LONDON    :
MARKET INSURANCE COMPANIES;            :
ASSICURAZIONI GENERALI S.P.A.; and     :
GENERAL SECURITY INDEMNITY             :
COMPANY OF ARIZONA, as attorney in fact for :
and successor in interest to GENERAL SECURITY :
INDEMNITY COMPANY (now known as        :
HUDSON SPECIALTY INSURANCE             :
COMPANY),                              :
                                       :
                           Defendants. :
--------------------------------------------------------- x

Civil Action No.:  07 Civ. 1209

District Judge Alvin K. Hellerstein

Magistrate Judge Theodore H. Katz

**NOTICE OF MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING INTERVENTION**



PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law In Support

of Excess Insurers' Motion for Reconsideration of the Court's Order Granting Intervention,

dated December 7, 2007, and all prior papers and proceedings, Defendants Certain Underwriters

at Lloyd's, London, Certain London Market Insurance Companies, Assicurazioni Generali

S.p.A., and General Security Indemnity Company of Arizona (collectively, the "Excess

Insurers"), by their counsel, Dewey & LeBoeuf LLP, will move this Court before the Honorable

Alvin K. Hellerstein in Room 14D in the Daniel Patrick Moynihan United States Courthouse,

located at 500 Pearl Street, New York, New York 10007, on a date to be determined by the

Court, for reconsideration of the Court's Order granting intervention (Dkt. No. 38 (Nov. 21,

2007)).

*[handwritten] Motion denied. Intervention was allowed w/out prejudice, so that all plaintiffs similarly situated could be affected by the determining order, and so that all could participate.   12-10-07   [signature]*

PLEASE TAKE FURTHER NOTICE that pursuant to this Court's Local Civil Rule

6.1(b), answering papers, if any, are to be served upon the undersigned on or before

December 21, 2007.

Dated:  New York, New York          DEWEY & LEBOEUF LLP
        December 7, 2007

                                    By: _____ s/ Fred W. Reinke _____
                                            Fred W. Reinke
                                            1101 New York Avenue, N.W.
                                            Suite 1100
                                            Washington, DC  20005-4213
                                            Telephone:  (202) 986-8061
                                            Facsimile:  (202) 986-8102

                                            Larry P. Schiffer
                                            Albert Y. Chang
                                            Lisa A. Keenan
                                            125 West 55th Street
                                            New York, NY  10019-5389
                                            Telephone:  (212) 424-8000
                                            Facsimile:  (212) 424-8500

                                    *Attorneys for Defendants*
                                    *Certain Underwriters at Lloyd's, London,*
                                    *Certain London Market Insurance Companies,*
                                    *Assicurazioni Generali S.p.A., and General*
                                    *Security Indemnity Company of Arizona*

TO:

Robert A. Weiner, Esq.
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
(212) 547-5400

William I. Sussman, Esq.
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
(212) 841-5700

- 2 -

Matthew M. Burke, Esq.
ROPES & GRAY LLP
One International Place
Boston, MA 12110

Denise A. Rubin, Esq.
WORBY GRONER & NAPOLI BERN, LLP
115 Broadway, 12th Floor
New York, NY 10006
(212) 367-3700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE WTC CAPTIVE INSURANCE COMPANY, INC.,

                    Plaintiff,

-against-

LIBERTY MUTUAL FIRE INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYDS OF
LONDON AND CERTAIN LONDON MARKET
INSURANCE COMPANIES; ASSICURAZIONI
GENERALI, S.P.A.; ODYSSEY RE HOLDING
CORPORATION, as successor in interest to GENERAL
SECURITY INDEMNITY COMPANY,

                    Defendants.

11/21/07

07-CV-1209 (AKH)

**NOTICE OF PUTATIVE
INTERVENORS' MOTION TO
INTERVENE**

Kindly Refer to the
Honorable Alvin K. Hellerstein

S I R S :

      PLEASE TAKE NOTICE that the putative intervenors, Gregory Abbott, Kevin Barry,

Phillip J. Bruno, Darren C. Harkins, Felix Torres, and Lee Weir ("Movants") by their counsel,

WORBY GRONER & NAPOLI BERN, LLP, and upon the annexed Declaration of Denise A.

Rubin dated November 19, 2007, the exhibits annexed thereto, and the Memorandum of Law in

Support annexed thereto, will move this Court for leave to intervene in the above-referenced

matter at the Courthouse thereof located at 500 Pearl Street, Courtroom 14D, New York, New

York  10007 at 10:30 am on January 4, 2008 or as another time set by the Court, pursuant to

Fed.R.Civ.P. 24(a) or, in the alternative, pursuant to Fed.R.Civ.P. 24(b), along with such other

and further relief as to this Court may seem just and proper.

Dated: New York, New York
       November 19, 2007

*The motion to intervene is granted, provided that there will be no arguments. The motion [is] settled. 11/21/07*

Yours, etc.,

WORBY GRONER & NAPOLI BERN, LLP
*Attorneys for the Movants/Putative Intervenors*

By: _____
Denise A. Rubin (DR5591)

115 Broadway, 12th Floor
New York, New York 10006
Phone: (212) 267-3700

To:


Margaret Warner, Esq.
Robert Weiner, Esq.
MCDERMOTT WILL & EMERY, LLP
*Attorneys for Plaintiff WTC Captive Insurance*
*Company, Inc.,*
340 Madison Avenue
New York, NY 10173-1922
(202) 756-8000

William I. Sussman, Esq.
Ropes & Gray, LLP
*Attorneys for Defendant Liberty Mutual Fire*
*Insurance Company*
1211 Avenue of the Americas
New York, New York 10036-8704
(212) 596-9000

Fred W. Reinke, Esq.
LeBoeuf, Lamb, Greene & MacRae LLP
*Attorneys for Defendants Certain Underwriters*
*at Lloyd's, London, and Certain London Market*
*Insurance Companies, Assicurazioni Generali*
*S.p.A., and General Security Indemnity Company*
1875 Connecticut Ave., N.W., Suite 1200
Washington, DC 20009
(202) 986-8061